RINZLER *et al.* v. FOLSOM.

No. 18048. Submitted January 15, 1953—Decided February 9, 1953— Rehearing denied February 25, 1953.

*B. Hugh Burgess* and *James M. Roberts,* for plaintiffs in error.

*Camp & Camp, Ben J. Camp, John Wesley Weekes* and *Weekes & Candler,* contra.

Almand, Justice. W. J. Folsom filed a petition against Joseph and Charles Rinzler, wherein he sought injunctive relief and

damages on account of an alleged continuing nuisance, where, by excessive concentration of surface waters on the defendants' properties, the same were discharged on the property of the plaintiff, the owner of the lower lot adjacent to the lot of the defendants, causing irreparable damages. On interlocutory hearing the judge granted an order restraining the defendants from permitting water to flow over the land of the plaintiff from their land in a greater volume and quantity than that which naturally flowed onto the lot of the plaintiff immediately prior to the time they erected certain apartment houses thereon. The defendants filed a bill of exceptions complaining of said order.

The evidence on the trial showed that the defendants owned a tract of land on Peachtree Road in Atlanta and that the plaintiff owned a tract of land lying just southwest of and adjoining the land of the defendants. Prior to 1951 the land of the defendants was a wooded tract with no buildings thereon. An 18-inch storm sewer, running from a storm-water drain on Peachtree Road, crossed the property of the defendants and emptied into a ditch which ran through the property of the plaintiff. Just below the point where this sewer emptied, there was a spring from which flowed a stream which also flowed through the ditch that crossed the property of the plaintiff. The plaintiff had landscaped his property along this ditch with grass and shrubbery, and had placed rocks in the ditch. In 1951 the defendants constructed apartment houses on the portion of their property fronting 265 feet on the north side of Peachtree Road and extending back approximately 500 feet, and paved a driveway on three sides of these apartments, and constructed a large rock retaining wall at the rear. During the construction of the apartments, Fulton County replaced the former 18-inch storm sewer with a 24-inch one which emptied, at approximately the same point as did the former sewer, into the ditch which crossed the property of the plaintiff. The defendants paid for the pipe for this storm sewer, and Fulton County furnished the labor. After the apartments had been built and the new sewer constructed, the amount of water which entered the ditch and flowed across the property of the plaintiff during heavy rains was much greater at a given time than before such construction. It washed out the rocks in the ditch on the plaintiff's

property, washed away his grass and shrubbery, formed a large lake in his yard, and deposited silt and garbage on his property, none of which happened prior to such construction.

The evidence showed that a Mr. Aken had constructed apartments on Peachtree Road adjoining those of the defendants, and that the storm water from his property was piped into the man hole at Peachtree Road, and went into the storm sewer and eventually crossed the property of the plaintiff. An engineer, Mr. Bracewell, testified for the plaintiff that the flooding could be corrected either by piping water from the end of the present sewer to Vermont Road, or by an open channel lined with stone or concrete. In his statement, Mr. Bracewell said: that before the defendants' property was improved there was no damage because the runoff of surface waters was very small, the property being mostly wooded, grassed and rolling land, but that, since the improvements have been made, there are now six acres in roof area and paving, which practically doubles the maximum runoff flow, making the existing 24-inch pipe inadequate; that the actual conditions demonstrate that this pipe will not carry the flood waters at the present, because large volumes of water have flowed over the top of the existing wall during heavy rains, causing two large cracks in the wall which may collapse at any time; and that the flood waters have already done considerable damage to the property of the adjoining owners, and unless confined to a pipe or channel they will continue to erode the plaintiff's property and finally create a deep gully from the apartment property to Vermont Road.

An engineer's report prepared by Vinson & Company was introduced in evidence by the defendants which showed: that the total flow of water during a heavy rainstorm from the defendants' property onto that of the plaintiff was 6.37 cubic feet per second; that 4.37 cubic feet per second of this flow was from a storm drain pipe located on the defendants' lot, which received water from two inlets located on Peachtree Road and from other sources; that 1.76 cubic feet per second flowed from the surface of the lot of the defendants onto the lot of the plaintiff on such occasions; and that before the defendants' lot was improved such surface flow was estimated to be 1.39 cubic feet per second.

1. The plaintiff's lot, being lower than the adjoining lot of the defendants, owes a servitude to the higher lot in receiving surface waters which normally run from the upper, provided the defendants, the owners of the higher lot, have done no act to increase such flow by artificial means. *Goldsmith* v. *Elsas, May & Co.*, 53 *Ga.* 186 (1). As to surface waters, the defendants had no right to concentrate and collect them and cause them to flow upon the lot of the plaintiff in greater quantities at a particular locality, or in a manner different from that in which the waters would be received by the lower estate if they simply ran down from the upper lot by the law of gravitation. *Cox* v. *Martin*, 207 *Ga.* 442 (2) (62 S. E. 2d, 164). Where the ,owner of the higher lot constructs and maintains culverts and embankments to control the flow of surface waters over his lot, he is under a duty to the lower lot owner to construct and maintain such culverts and embankments so that the accumulation of waters from freshets likely to occur will not cause breaks in the embankments and consequent inundation of the lots of the lower landowners. *Georgia Railroad & Bkg. Co.* v. *Bohler*, 98 *Ga.* 184 (2) (26 S. E. 739); *Louisville & Nashville R. Co.* v. *Jackson*, 139 *Ga.* 543 (77 S. E. 796).

2. The allegations of the petition—which charged the defendants with allowing garbage and refuse to accumulate on their property and to be washed by the flow of surface waters onto the plaintiff's property, making it unhealthful and unsanitary; that the defendants' concentration of the surface waters on their lot caused them to be discharged at one point on the plaintiff's lot, inundating his lot and washing away flower bulbs, shrubbery, and plants, and that such occurs when it rains—are sufficient to charge the defendants with maintaining a nuisance. The foundation of the interference of equity to restrain a nuisance rests on the necessity of preventing irreparable damages and a multiplicity of suits. Such jurisdiction is closely akin to restraining a trespass, the distinction between the two being that trespass is a direct infringement of one's right of property, while in the case of a nuisance the infringement is the result of an act which is not wrongful in itself but only because of the consequences which flow from it. A continuing nuisance or a constantly recurring grievance does not necessarily mean a

constant and unending nuisance or injury, but one which occurs so often, and is so necessarily an incident to the use of the property involved, that it can fairly be said to be continuous. *Central of Ga. Ry. Co.* v. *Americus Construction Co.,* 133 *Ga.* 392 (65 S. E. 855); *Holman* v. *Athens Empire Laundry Co.,* 149 Ga. 345 (100 S. E. 207, 6 A. L. R. 1564); *Town of Rentz* v. *Roach,* 154 *Ga.* 491 (115 S. E. 94).

3. Applying the above principles of law to the pleadings and evidence in this case, the trial judge did not abuse his discretion in granting an interlocutory injunction in the following terms: that the "defendants be and they are, pending further order of the court, restrained and enjoined from permitting and allowing water to flow onto and over the lands of the plaintiff, from lands of defendants (both tracts of land being described in plaintiff's petition) in greater volume and quantity than that which naturally flowed onto and over said lands of defendants [plaintiff] immediately prior to and at time defendants erected on their lands, certain apartment houses, and graded and paved part of said premises." This order is not subject to the criticism that it is a mandatory injunction, forbidden by Code § 55-110. Though the defendants in complying with restraints imposed by the order may have to perform some act, the essential nature of the order is to restrain and not to compel. *Oostanaula Mining Co.* v. *Miller,* 145 *Ga.* 90 (1 b) (88 S. E. 562); *Sweetman* v. *Owens,* 147 *Ga.* 436 (1) (94 S. E. 542); *Spencer* v. *Tumlin,* 155 *Ga.* 341 (116 S. E. 600).

*Judgment affirmed. All the Justices concur, except Atkinson, P. J., and Wyatt, J., not participating; and Head, J., disqualified.*