A97A1762. DUMAS v. TRIPPS OF NORTH CAROLINA, INC.
(495 SE2d 129)

RUFFIN, Judge. ˙

Sandra Lee Dumas slipped and fell on a patch of ice as she was exiting her car in the parking lot of a restaurant owned and operated by Tripps of North Carolina, Inc. d/b/a T. K. Tripps ("Tripps"). Dumas sued Tripps for her injuries and the trial court granted Tripps summary judgment. Dumas appealed, and for the following reasons, we reverse.

"It is well established that on appeal of a grant of summary judgment, the appellate court must determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. [Cit.] This requires a de novo review of the evidence." *Moore v. Food Assoc.,* 210 Ga. App. 780, 781 (437 SE2d 832) (1993).

Viewed in a light most favorable to Dumas, the nonmoving party, the evidence shows that at approximately 9:30 p.m. on January 22, 1994, Dumas drove her husband to Tripps to eat with family and friends. It was a cold but clear day. There had been no snow or precipitation during the week prior to that evening. Dumas pulled into a parking space next to a hill and wooded area. Other cars were parked in the vicinity. She opened her car door and attempted to stand up. At which time, she slipped on a patch of ice that had formed from water running from the hill and wooded area. Dumas said that she did not see the ice until after she fell, in part because the area where she parked was dark and had no lighting. Dumas' husband and her daughter, whom Dumas was meeting at the restaurant, confirmed Dumas' statement that the area where Dumas parked was dark, making it more difficult to see the ice covering the asphalt. Dumas admitted, however, that she did not look down at the asphalt before exiting her car.

In support of its motion for summary judgment, Tripps focused solely on Dumas' alleged failure to exercise ordinary care for her own safety. Tripps presented no evidence regarding its inspection procedures, if any, of the parking lot or the length of time the ice patch had

been allowed to exist. The trial court made no findings of fact in granting summary judgment, but simply concluded there was no genuine issue as to any material fact. We disagree.

" '[L]iability for injuries resulting from an invitee's slip and fall on a proprietor's premises is determined by the relative knowledge possessed by the proprietor and the invitee of the condition or hazard which resulted in the injury.' " *Shansab v. Homart Dev. Co.*, 205 Ga. App. 448, 450 (3) (422 SE2d 305) (1992). " '[A] knowledgeable plaintiff cannot recover damages if by ordinary care he could have avoided the consequences of defendant's negligence. [Cit.]' " Id. "Therefore, the legal issue in the instant case is whether the evidence, when construed most favorably for [Dumas], demonstrates as a matter of law that [Dumas] did not have knowledge superior or equal to that of [Tripps] of the icy condition or hazard which resulted in the slip and fall. [Cit.]" Id. at 450-451.

1. We find that a jury question remains as to whether Dumas had superior or equal knowledge of the ice and whether she failed to exercise ordinary care for her own safety. There had been no snow or rain at any time during the preceding week, so there was no apparent reason for Dumas to expect ice to have formed on Tripps' parking lot. There is no evidence that prior to the fall she saw water flowing down the hill. Nor is there evidence that Dumas noticed ice or any substance on the asphalt as she pulled into the parking lot and then the parking space. However, there is evidence that the ice was not clearly visible given the time of day and the lighting in the lot.

In support of its position that she did not exercise ordinary care for her safety, Tripps highlights Dumas' statement that she did not look down at the asphalt before stepping out of the car. " 'It is generally incumbent upon one to use his eyesight for the discovering of any obstruction that may have been placed in the way.' " *Gray v. Alterman Real Estate Corp.*, 196 Ga. App. 239, 240-241 (396 SE2d 42) (1990). However, "an invitee's failure to exercise ordinary care for personal safety is not established as a matter of law by the invitee's admission that she did not look at the site on which she subsequently placed her foot. Rather, the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation." *Robinson v. Kroger Co.*, 268 Ga. 735 (472 SE2d 474) (1997).

While Dumas may not have looked directly below her before putting her feet on the asphalt, there is no evidence that the ice was clearly visible and that she would have seen it even had she looked. Nor is there evidence that Dumas noticed something unusual on the asphalt as she was driving into the parking space. If Dumas had no reason to expect ice to be on the ground given the weather conditions and noticed nothing covering the space as she parked, we cannot con-

clude as a matter of law that it was unreasonable for her to step out of her car without first inspecting the ground beneath her. Accordingly, a jury question remains concerning whether Dumas failed to exercise ordinary care for her own safety under the circumstances. Summary judgment in favor of Tripps was inappropriate.

2. Questions of fact similarly exist concerning whether the ice had been in existence for a length of time such that Tripps had actual or constructive knowledge of it, and whether Tripps made any efforts to inspect the premises but failed to correct the ice hazard within a reasonable time.

"Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. "The owner/occupier is not required to warrant the safety of all persons from all things, but to exercise the diligence toward making the premises safe that a good business person is accustomed to use in such matters. [Cit.] This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises. [Cits.]" *Robinson,* supra at 740.

Tripps argues that because the ice was naturally occurring and had not become an obvious hazard, it had no duty to find and remove it. In support of this position, Tripps relies on *Fisher v. HBS Mgmt.,* 220 Ga. App. 752 (469 SE2d 885) (1996); *Columbus Doctors Hosp. v. Thompson,* 224 Ga. App. 682 (482 SE2d 705) (1997); and *Westbrook v. M & M Supermarkets,* 203 Ga. App. 345 (416 SE2d 857) (1992). In these cases, the plaintiffs fell on ice after recent ice or snow storms of which the plaintiffs were aware. Summary judgment was appropriate in all three cases because the plaintiffs had actual knowledge of the icy conditions or their constructive knowledge, given the prevailing weather conditions, was equal to that of the property owners. *Westbrook,* supra at 345-346; *Fisher,* supra at 752-753; *Columbus,* supra at 683-684. The instant case is distinguishable as there had been no storms or precipitation and Dumas had no reason to suspect ice in the parking lot.

Moreover, the accumulation of naturally occurring ice does not negate an owner's duty to exercise ordinary care in inspecting the premises in every circumstance. Ice forming due to inevitable natural forces unaffected by human agency "does not preclude examination into the question of whether or not the defendant was negligent in failing to take remedial action." *Fincher v. Fox,* 107 Ga. App. 695, 698 (1) (131 SE2d 651) (1963). "Liability results only from [an owner's]

failure to exercise ordinary care to make repairs after notice to him of the defective condition coupled with a failure to repair within a reasonable time. [Cit.]" Id.

Ice forming due to water run-off from a wooded area is naturally occurring, just like ice occurring after a snow storm. Absent evidence that Tripps reasonably inspected the parking lot for defects and that the ice formation was a new defect of which Tripps had no notice or sufficient time to correct, we cannot say as a matter of law that it complied with its duty to business invitees to keep the premises safe.

"[T]he 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and . . . summary judgment is granted only when the evidence is plain, palpable, and undisputed." *Robinson*, supra at 748. The evidence in the instant case does not meet this standard, as jury questions remain regarding Tripps' and Dumas' knowledge of the ice, whether Dumas failed to exercise ordinary care for her safety, and whether Tripps did not exercise ordinary care for its customers. Accordingly, the trial court erred in granting summary judgment to Tripps.

*Judgment reversed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED DECEMBER 12, 1997.

*Westmoreland, Patterson & Moseley, Thomas H. Hinson II*, for appellant.

*Martin, Snow, Grant & Napier, Jay C. Traynham, Lisa Edwards*, for appellee.