## A03A1476. THOMAS v. EXECUTIVE COMMITTEE OF THE BAPTIST CONVENTION OF THE STATE OF GEORGIA.
### (585 SE2d 217)

ELDRIDGE, Judge.

Hatti Thomas appeals from a State Court of DeKalb County's grant of summary judgment to the Executive Committee of the Baptist Convention of the State of Georgia ("Baptist Convention") on Thomas' complaint for money damages for an injury Thomas suffered when she fell as a consequence of stepping in a pothole in the parking lot of the Baptist Convention Center ("Center") in Toccoa. Because an issue of fact exists as to whether Thomas exercised ordinary care for her safety, we reverse.

Summary judgment is appropriate when the trial court, viewing all the evidence and drawing all reasonable inferences in a light most favorable to nonmovant Thomas, concludes that the evidence does not create a triable issue as to an essential element of the case. Certain issues of premises liability, such as the plaintiff's lack of ordinary care for personal safety, are generally not susceptible of summary adjudication, and summary judgment is granted only when the evidence is plain, palpable, and undisputed.[1] "Clearly, making a choice as to what to believe has no place in summary judgment."[2]

With these principles in mind, the evidence of record shows that, on Friday, May 28, 1999, Thomas arrived at the Center to attend a women's conference sponsored by her church, the Wings of Faith. Apparently, the Center has a main hotel-type facility that also contains the meeting rooms for convention topics and speakers. In this case, in order to participate fully in the convention, it was unnecessary to leave the hotel, except to eat in the Center's cafeteria or to attend worship services at a formal chapel near the lake on the property. The cafeteria is located across the Center's parking lot from the hotel and is accessed on foot.

Thomas testified by deposition that she had never been to the

---

[1] *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (493 SE2d 403) (1997).
[2] *Quill v. Newberry*, 238 Ga. App. 184, 189 (1) (c) (518 SE2d 189) (1999).

Center. After she arrived and was given her assigned room, she went to a worship service held in one of the rooms of the hotel and then went to bed. On Saturday, May 29, 1999, Thomas attended conference classes in the hotel. She testified that she recalled eating at the cafeteria at some time during the day when she followed another conference attendee to the cafeteria via a route by the lake; "I just went with whoever was going there because I didn't know the area."

On Saturday evening, Thomas again followed an attendee to the cafeteria, this time for supper. She testified that "I went two separate ways, so I never repeated the same way twice. One time we went and we came back up through the lake way and entered in a different way. And then the other time we come from the back way and entered a different way."

After supper, at approximately 6:30 p.m., Thomas left the cafeteria and was walking across the parking lot to the hotel. She testified that the "sun was going down, no street light was on"; that "it was going into dark, you know, evening into night." In addition, Thomas stated that there were shadows from the trees and from the Center's buildings encircling the parking lot. While walking across the lot, Thomas stepped into a pothole in the asphalt and fell, sustaining injury. She deposed that she did not recall whether the pothole, itself, was hidden in shadows from the trees and/or buildings.

In addition, the record contains two affidavits from investigators hired by Thomas. The affidavit of one investigator, Donté Reid, details the condition of the Center's parking lot as he observed it two months after Thomas' fall:

> The asphalt was gray in color and appeared to be very old. It had several cracks appearing as darker gray areas of asphalt or tar. The surface where Ms. Thomas fell was uneven, it contained some "divots" as large as a human foot, and a large oblong concrete patch was in the middle of the asphalt. It too was cracked. I took several photographs of the parking area and I specifically photographed the "divot" or pothole where Ms. Thomas fell.

Photographs of the section of the Center's parking lot where Thomas fell are included in the record before us and demonstrate disrepair.

The affidavit from the other investigator, Shawn Clark, detailed the measurements he took in relation to the pothole where Thomas fell, the tree line surrounding the Center's parking lot, and the buildings accessed through the lot; from these measurements, Clark was able to conclude that the location where Thomas fell "is in shadow from approximately 5:30 p.m. until dark on May 29 of any year."

Thomas filed suit. The Baptist Convention made a motion for

summary judgment. The trial court granted the motion, finding that, while the Baptist Convention had constructive knowledge of the pothole as a static, hazardous condition that had been present over time, under the "plain view doctrine," Thomas "knew or should have known of the complained-of condition of the pavement." Also, citing precedent from this Court, the trial court held that,

> It is common knowledge that small cracks, holes and uneven spots often develop in pavement; and it has been held that where there is nothing to obstruct or interfere with one's ability to see such a "static" defect, the owner or occupier of the premises is justified in assuming that a visitor will see it and realize the risk involved.[3]

As a matter of fact, the trial court found that,

> the Plaintiff admits that at the time of her alleged fall she was not distracted in any way by the possibility of vehicular traffic or otherwise; it was not dark at the time in question; and, although there were shadows from trees and buildings, the Plaintiff does not recall whether such shadows even reached to the place where she allegedly fell. Nor is there any evidence that the general condition of the pavement at the time in question was in any way hidden from the view of the Plaintiff or any other invitee. . . . Under the facts of the instant case, the court finds that the Defendant, as owner/occupier of the premises in question, was justified in assuming that the Plaintiff visitor would see it and realize the risk involved; and that therefore, no fact question remains whether the Defendant acted reasonably in assuming the defects of which the Plaintiff complains were noticeable and the risk it caused appreciable by the Plaintiff-visitor.[4]

*Held*:

Pursuant to OCGA § 51-3-1, the Baptist Convention was under a duty to exercise ordinary care to maintain its parking lot safely for its invitees, of whom Thomas was one.[5] Notwithstanding, the trial court granted the Baptist Convention's motion for summary judg-

---

[3] See *Zack's Properties v. Gafford*, 241 Ga. App. 43, 44 (526 SE2d 80) (1999).

[4] (Citations and punctuation omitted.)

[5] See OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.").

ment. For the reasons that follow, we find such ruling to be error as a matter of law and fact.

a. The "plain view doctrine" is a civil concept that embodies the principle that an invitee is under a duty to look where he is walking and to see obvious, *"large* objects in plain view which are at a location where they are customarily placed and expected to be."[6] The open and large character of the object at issue was the initial touchstone of the "plain view doctrine," because there is no duty to warn of the perfectly obvious:

> Warnings of a condition which are or should be obvious are not required. Of what avail is it to post a sign on steps saying to one who approaches "This is a flight of steps," or on a brick wall saying "Here is a brick wall," or on a telephone pole saying "Beware of this, it is a pole?"[7]

However, as clearly stated by the Supreme Court in *Robinson v. Kroger Co.*, supra, "the 'plain view' doctrine has undergone radical transmutation"[8] via appellate decisions from this Court that have applied the doctrine to everything from a broom to a bread tray placed in a grocery store aisle.[9] Consequently, the "plain view doctrine,"

> has been used in such a manner as to remove any reasonable limits on its application when it has repeatedly been held that . . . as long as the invitee's view was not obstructed, a hazard, no matter its size, was in "plain view" and precluded recovery if the hazard could have been seen had the invitee looked at the ground.[10]

Here, the evidence is that the pothole Thomas stepped in was approximately the size of a human foot and was referred to as a "divot" of asphalt gone from the parking lot. From our review of the record, including the photographs, we cannot say that the "divot" in question was so open, obvious, and large that the "plain view doctrine" applies. Therefore, its application to the facts of this case was error as a matter of law.

---

[6] (Emphasis supplied.) *Robinson v. Kroger Co.*, supra at 742; *Riggs v. Great A & P Tea Co.*, 205 Ga. App. 608, 609 (423 SE2d 8) (1992).

[7] (Punctuation omitted.) *Stenhouse v. Winn Dixie Stores*, 147 Ga. App. 473, 474 (249 SE2d 276) (1978); *Gibson v. Consolidated Credit Corp.*, 110 Ga. App. 170, 179 (138 SE2d 77) (1964).

[8] *Robinson v. Kroger Co.*, supra at 742.

[9] Id.

[10] Id.

b. We have previously found that the development of *small* cracks, holes, and uneven spots in pavement is so customary and common that, if unobstructed, an owner/occupier is justified in assuming that a visitor will see them and realize the risk.[11] This holding, however, does not embrace the idea that it is justifiable for an owner/occupier to permit a parking lot to become pitted with potholes because an invitee should expect and assume that such hazards are common to all pavements. We decline to render OCGA § 51-3-1 meaningless as to paved surfaces. That a parking lot may contain one or more human foot-sized "divots" cannot as a matter of law be deemed "common knowledge," and we will not require an invitee to presume the existence of such. Applying a "common knowledge" standard to the facts of this case was error as a matter of law.

c. The pothole/divot Thomas stepped into is a "static" condition. A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it. "[If] nothing obstructs the invitee's ability to see the static condition, the proprietor may safely assume that the invitee will see it and will realize any associated risks."[12] Consequently, as applied to the grant of summary judgment in this case, the issue is whether the factual evidence is plain, palpable, and undisputed that nothing obstructed Thomas' ability to see the pothole/divot and thus the defect was or should have been visible to her.

As to this issue, the trial court factually determined that it was not dark at the time in question; however, the facts of record and inferences therefrom favorable to Thomas are that the sun was "going down" and that the parking lot was indeed "going into dark . . . evening into night." Additionally, although shadows from trees and buildings surrounded the parking lot, the court found it determinative that *Thomas* did not recall whether the pothole was in shadow; but, even if Thomas had no such recollection, the affidavit from investigator Clark unequivocally stated that, at the time of the fall, the pothole would have been in shadow. Finally, the trial court found as a matter of fact that there is no evidence that the general condition of the pavement at the time in question was in any way hidden from Thomas' view; however, such finding ignores the evidence that the lot was darkened and the defect in shadow, as well as testimony from Thomas that she had never traversed that section of the lot before and was not familiar with its general condition. Under the facts of record and the inferences drawn therefrom favorable to Thomas, we cannot find that her ability to see the pothole/divot was,

---

[11] *Crenshaw v. Hogan*, 203 Ga. App. 104, 105 (416 SE2d 147) (1992).

[12] *Poythress v. Savannah Airport Comm.*, 229 Ga. App. 303, 306 (3) (494 SE2d 76) (1997).

as a matter of fact, "plain, palpable, and undisputed."[13] Thus, the grant of summary judgment to the Baptist Convention was error. "Whether [Thomas'] failure to observe the defect amounted to a lack of reasonable care was a jury question."[14]

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JULY 14, 2003.

*Wendell S. Henry*, for appellant.
*Zirkle & Hoffman, Charles B. Zirkle, Jr., Devon A. Atchison*, for appellee.

