## A08A1074. BULLARD v. MARRIOTT INTERNATIONAL, INC. et al.
### (667 SE2d 909)

JOHNSON, Presiding Judge.

After she tripped and fell on a hotel walkway, Lanelda Bullard sued Marriott International, Inc. and several other alleged designers, owners, and operators of the hotel (collectively, "Marriott") for personal injuries. The trial court granted summary judgment to Marriott, and Bullard appeals. For reasons that follow, we reverse.

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law.[1] We review the grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the nonmoving party.[2]

So viewed, the evidence shows that from 1998 to 2005, Bullard lived at the TownePlace Suites by Marriott with her husband, who was a member of the hotel's live-in staff. On November 10, 2002,

---

[1] *Christensen v. Overseas Partners Capital*, 249 Ga. App. 827 (549 SE2d 784) (2001).
[2] Id.

Bullard left the hotel building via a brick walkway. The pathway led to various hotel entrances, as well as the pool, and she typically used it to enter and exit the hotel. That day, however, she left through a door she did not generally use, and she walked down a portion of the brick path that was not familiar to her. Although she saw no problems or hazards in the area as she walked, she stumbled over a raised brick and fell to the ground, injuring her arm.

The walkway was constructed of brick pavers laid in sand. Donna McHugh, the hotel's general manager from December 1998 through October 2004, testified that the walkway was uneven, often because sand eroded from under various bricks, causing them to shift and raise "up and down." Another hotel employee similarly testified that bricks on the walkway would loosen and shift over time. Prior to Bullard's injury, McHugh had received complaints from hotel guests who had tripped on the uneven walkway. Although no guest had fallen, she reported the walkway problem to her superiors.

To help fix the uneven conditions, employees repositioned the bricks and placed additional sand under them. The repair efforts, however, were temporary, and the bricks eventually began to shift again, rising up and moving downward. After Bullard fell, McHugh and another employee observed a raised brick in the area where she tripped. According to McHugh, the brick was "substantially" higher than the others — at least one fourth of an inch — and had raised up more than any brick she had ever seen on the path.

Liability in this type of "trip and fall" case does not arise from proof of a fall alone. The true basis of a landowner or operator's liability is "superior knowledge of a condition that may expose . . . invitees to an unreasonable risk of harm. Recovery is allowed only when the proprietor had knowledge and the invitee did not."[3] In granting summary judgment, the trial court determined as a matter of law that Bullard had equal knowledge of any defect in the brick walkway, precluding recovery.

1. Seeking to preserve the trial court's ruling, Marriott argues that the walkway was not a defective or dangerous condition about which it had knowledge. It notes that no one had previously been injured on the brick path and that, despite her significant use of the walkway, Bullard had not observed any problem on it before her fall. According to Marriott, the path did not subject Bullard to an unreasonable risk of harm.

---

[3] (Punctuation and footnote omitted.) Id. at 828. After Marriott moved for summary judgment, a dispute arose as to whether Bullard was an invitee, guest, or licensee on the property. The trial court, however, did not resolve that dispute, and Marriott apparently assumed Bullard was an invitee for purposes of the summary judgment motion. We will make a similar assumption here.

McHugh testified, however, that she had received complaints from guests who had tripped on the uneven walkway, and another hotel employee testified that he had also stumbled on a raised brick. In response to guest complaints, McHugh attempted to level or fix the uneven areas, but her efforts provided only a temporary remedy, as the bricks eventually began to shift and move again. McHugh further testified that the walkway had been a problem since 1999, and she had reported the issue to her superiors. Finally, Bullard proffered expert testimony that the raised brick on which she fell would not have been conspicuous as she approached.

Construed favorably to Bullard, such evidence, as well as testimony that bricks on the walkway continually shifted, loosened, and raised up or down, at least created a jury issue as to (1) whether the walkway constituted a dangerous condition, and (2) whether Marriott knew of that condition.[4] Although Marriott may not have been aware of the particular elevated brick on which Bullard tripped, it knew that shifting bricks had been a problem for several years. Given such knowledge, a question of fact remains as to whether Marriott took reasonable steps to prevent a forseeable danger.[5]

2. Marriott also argues that any hazard presented by the walkway was a static defect about which Bullard had knowledge. "A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it."[6] A person is presumed to have knowledge of such a defect "when that person has successfully negotiated the alleged dangerous condition on a previous occasion."[7] Marriott argues — and the trial court found — that because Bullard routinely walked on the brick pathway, she presumably knew about the alleged hazard.

We disagree. Even if we assume, without deciding, that the hazard here was static, questions of fact remain regarding Bullard's knowledge. Notably, "[i]t is a plaintiff's knowledge of the *specific*

---

[4] See *Rozy Investments v. Bristow*, 276 Ga. App. 278, 279-280 (4) (623 SE2d 171) (2005) (gas station owner had knowledge of dangerous condition created by gas pump hose that was on the ground and tripped plaintiff; owner knew that portions of its hoses remained on the ground after hose nozzles were returned to the pump). Compare *Garrett v. Hanes*, 273 Ga. App. 894 (616 SE2d 202) (2005) (plaintiff failed to show that step on which she fell was hazardous; she offered no expert testimony that the step was negligently designed or constructed, nothing indicated that the step was difficult to discern, and no one had previously fallen on the step).

[5] See *Jackson v. Waffle House*, 245 Ga. App. 371, 373-374 (1) (537 SE2d 188) (2000) ("Evidence that the parking lot had been in disrepair for many years authorizes the finding that defendant failed in its duty to carry out periodic inspections and to take reasonable steps to protect invitees from those dangers foreseeable from the uneven parking lot.").

[6] *Thomas v. Executive Committee of the Baptist Convention &c.*, 262 Ga. App. 315, 319 (c) (585 SE2d 217) (2003).

[7] (Punctuation and footnote omitted.) *Nemeth v. RREEF America*, 283 Ga. App. 795, 797 (1) (643 SE2d 283) (2007).

hazard which precipitates the slip and fall which is determinative, not merely her knowledge of the generally prevailing hazardous conditions or of the hazardous conditions which plaintiff observes and avoids."[8]

Bullard testified unequivocally that she had never seen a hazard or problem on the brick walkway. Moreover, regardless of whether she had some knowledge of uneven bricks in the area she typically used, the evidence does not demand a finding that she had encountered or successfully negotiated the substantially raised brick that caused her fall.[9] Although she had used the brick pathway numerous times, she was not familiar with the portion of the walkway where she was injured. We recognize that she may have entered this area sometime during her lengthy residence at the hotel, but no evidence establishes when she might have done so or whether the brick at issue here had shifted or raised up at that point.

Finally, factual questions remain as to whether Bullard should have seen the hazard before she tripped over it. McHugh testified that the raised brick "was obvious from the other bricks around it." Bullard, however, asserted that she did not see it, and she presented expert testimony that it would not have been conspicuous. Under these circumstances, we cannot conclude that, as a matter of law, Bullard's failure to see the raised brick was unreasonable or showed a lack of ordinary care.[10]

Questions of fact remain as to Bullard's knowledge and her exercise of ordinary care. Accordingly, the trial court erred in granting summary judgment to Marriott.[11]

*Judgment reversed. Barnes, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 24, 2008 — 

*Goldstein & Hayes, Jonathan P. Hayes*, for appellant.

---

[8] (Punctuation and footnote omitted.) *Jackson*, supra at 374 (2).

[9] See *Rozy Investments*, supra at 282 (4) (although plaintiff knew from prior visits to gas station that pump hoses might be on the ground, the evidence did not establish that plaintiff "knew that in this instance the hose was there"); *Jackson*, supra at 374 (2) (evidence did not demand a finding that plaintiff had constructive knowledge of parking lot pothole that caused her fall; although she had walked through the parking lot many times, she denied that she had previously entered the area where she fell). Compare *Nemeth*, supra at 797-798 (1) (plaintiff presumed to have knowledge of the visibly uneven condition of brick patio that he had successfully traversed prior to his fall).

[10] See *Thomas*, supra at 319-320 (c); *Christensen*, supra at 830 (2).

[11] See *Jackson*, supra at 375 (2).

*Hawkins & Parnell, David C. Marshall, Christian J. Lang*, for appellees.