A10A0012, A10A0013. LORE et al. v. SUWANEE CREEK
HOMEOWNERS ASSOCIATION, INC.; and vice versa.
(699 SE2d 332)

DOYLE, Judge.

Rebecca A. Lore and David Alan Lore filed suit against their homeowners association, the Suwanee Creek Homeowners Association, Inc. ("SCHOA"), alleging claims for nuisance, trespass, and negligence based on water runoff from a SCHOA-owned "Recreation Area" immediately behind their property. The Lores also asserted a personal injury claim based on injuries Rebecca Lore sustained when the ground upon which she was standing collapsed, attributing the collapse to the repeated flooding and storm-water runoff washing away the earth under what appeared to be solid ground surface. SCHOA moved for summary judgment on all claims. The trial court granted summary judgment as to the Lores' personal injury claims and denied summary judgment as to the remaining claims. The Lores appeal the grant of summary judgment in Case No. A10A0012, and SCHOA appeals the denial of summary judgment in Case No. A10A0013. For reasons that follow, we reverse in both cases.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A trial court's grant of summary judgment is reviewed de novo on appeal, construing the evidence in the light most favorable to the nonmovant. Once the party moving for summary judgment has made a prima facie showing that it is entitled to judgment as a matter of law, the nonmovant must then come forward with rebuttal evidence sufficient to show the existence of a genuine issue of material fact.[1]

So viewed, the record shows that SCHOA owns and maintains a large wooded area known as the Recreation Area, which was constructed by Westbrook 23, LLC, the developer for the subdivision, and which abuts the rear of the Lores' property. The Lores' property is downhill from the Recreation Area. The plat for the development denotes a 20-foot "improved ditch" that, according to the Lores' complaint, would direct water runoff through pipes and into a pond and a creek in the Recreation Area; the ditch was designed to ensure that water runoff did not traverse lots in the subdivision, including the Lores' property. According to the complaint, the subdivision

---

[1] (Punctuation omitted.) *Rutherford v. Revco Discount Drug Centers*, 301 Ga. App. 702 (689 SE2d 59) (2009).

declaration provides that SCHOA "shall maintain and keep in good repair . . . all storm water, storm water management, and detention facilities serving the Development."

It is undisputed that the improved ditch was never constructed. According to the Lores, storm water flows through pipes and onto the ground of the Recreation Area, where it then flows directly downhill to the Lores' property before it reenters the Recreational Area and ultimately a pond. The Lores documented 48 instances of storm-water runoff onto their property between June 2004 and October 2007. Mrs. Lore deposed that a majority of the water "is coming specifically from the [SCHOA] property [and] ponding on [the Lores'] property." The Lores made extensive complaints to SCHOA about the water, but they were unavailing. In 2004, Westbrook (the Developer) offered to construct the ditch in exchange for a hold harmless agreement from SCHOA, but SCHOA would not agree.

On October 23, 2006, Mrs. Lore walked onto the Recreation Area to pick up trash. She was at the top of an embankment, looking down, when she squatted and then stood up, "the ground just gave out from underneath [her]," and she then fell, impaling her forearm on a branch. Mrs. Lore's injury occurred "at least [four] feet away from [the] closest edge of [a] sinkhole . . ." that the Lores first noticed on June 27, 2004, while they were cleaning their deck.[2] Prior to the incident, Mrs. Lore observed the sinkhole approximately 50 times. Because she was worried that someone could fall into the hole and injure himself, she notified no fewer than 28 people, including neighbors, SCHOA board members, and county officials, about the hole.[3] Prior to her fall, Mrs. Lore took multiple photographs of the hole, and she placed orange warning cones around it for a six-month period, but ultimately stopped because the cones repeatedly blew away. According to Mrs. Lore, she spent "hundreds" of hours investigating the sinkhole, which included researching "facets of the county and the board"; she did not, however, testify about the results of her investigation. At her deposition, she was asked whether in October 2006, there was anyone "more familiar with the sinkhole and its possible dangerous condition"[4] than she was, and Mrs. Lore replied, "Not more so, no. There's probably people that are equal but not more so." However, when asked about her knowledge of the danger surrounding the hole before her incident, Mrs. Lore testified

---

[2] Mrs. Lore deposed that because she "was quite a few feet away from the edge of the sinkhole itself, . . . [she] did not feel like there was any . . . risk of [her] falling in the hole or . . . dirt . . . dislodging."

[3] Children frequently played football and in a creek in the Recreation Area.

[4] Mrs. Lore deposed that she thought the sinkhole posed a danger to "grounds[ ]keepers or children playing."

that she was concerned that someone might back into it or might walk up to the edge, lose his balance, and fall into it. Mrs. Lore further expressed that she, however, did not fall or slip into the hole; rather, she was "swallowed up" by it. When asked whether the ground around the sinkhole was unstable, Mrs. Lore replied, "I don't know. I just know that the water was . . . it continued to cut lengthwise and depth[wise]. It didn't seem to be changing too much in its width. It was just cutting straight down and through, trying to find its way."[5]

After the Lores filed suit, SCHOA filed a motion for summary judgment. Following oral argument, the trial court granted summary judgment to SCHOA on the personal injury claim and denied SCHOA's motion for summary judgment as to the Lores' claims for trespass, nuisance, and negligence. This appeal follows.

### Case No. A10A0012

1. The Lores argue that the trial court erred in granting summary judgment to SCHOA on their personal injury claim. We agree.

Following the seminal Supreme Court decision in *Robinson v. Kroger Co.*,[6]

> to survive a motion for summary judgment, a plaintiff must come forward with evidence that, viewed in the most favorable light, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard. At that point, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety). If the defendant succeeds in doing so, the burden of production shifts back to the plaintiff to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by the plaintiff or tends to show that any such negligence resulted from the

---

[5] The dissent points out that Mrs. Lore observed that the hole had "tripled in width" over the course of watching it for two years. But when asked whether the sinkhole got larger after two significant rain events, Mrs. Lore replied, "Nothing usually would stick out that, wow, it's a whole lot bigger than it was before the rain, no." Mrs. Lore deposed that there was no one- or two-time significant widening of the hole. Rather, it just gradually increased in size.

[6] 268 Ga. 735 (493 SE2d 403) (1997).

defendant's own actions or conditions under the defendant's control.[7]

(a) *SCHOA's Knowledge*. Here, although it is undisputed that SCHOA had actual knowledge of the sinkhole in the Recreation Area, there is no evidence that SCHOA had actual knowledge that the ground "at least four feet away" from the sinkhole was unstable and susceptible to collapse. Thus, the Lores must come forward with evidence that SCHOA had constructive knowledge of the hazard.

"An owner/occupier is on constructive notice of what a reasonable inspection would reveal."[8] *Robinson* provides that an owner/occupier of land must

> exercise the diligence toward making the premises safe that a good business person is accustomed to use in such matters. This includes inspecting the premises *to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge*, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises.[9]

Construing the evidence in favor of Mrs. Lore, the evidence that she repeatedly notified SCHOA that there was a sinkhole in the Recreation Area raises a question of fact as to whether SCHOA failed in its duty to conduct a reasonable inspection of the sinkhole and the surrounding area to determine whether it posed a danger to invitees and whether it failed to take reasonable steps to protect invitees from those dangers.[10] To hold otherwise would be to effectively permit SCHOA to escape liability once Mrs. Lore notified it of the existence of the sinkhole by intentionally failing to inspect the hole and the surrounding area for instability or other dangers to avoid knowledge of the hazard.

The dissent concludes that neither Lore nor SCHOA made an

---

[7] *American Multi-Cinema v. Brown*, 285 Ga. 442, 444-445 (2) (679 SE2d 25) (2009).

[8] *Jackson v. Waffle House*, 245 Ga. App. 371, 373 (1) (537 SE2d 188) (2000).

[9] (Emphasis supplied.) *Robinson*, 268 Ga. at 740 (1).

[10] See *Bullard v. Marriott Intl.*, 293 Ga. App. 679, 680-681 (1) (667 SE2d 909) (2008) (evidence that defendant received previous complaints regarding uneven walkway and made attempts to repair it created a jury issue as to whether defendant took reasonable steps to prevent a foreseeable danger); *Hagadorn v. Prudential Ins. Co.*, 267 Ga. App. 143, 146 (598 SE2d 865) (2004) ("[D]efendants were, at least, on constructive notice regarding the condition of the [slanted] drainage culvert, as an owner/occupier is generally on constructive notice of what a reasonable inspection would reveal."); *Jackson*, 245 Ga. App. at 373-374 (1) ("Evidence that the parking lot had been in disrepair for many years authorizes the finding that defendant failed in its duty to carry out periodic inspections and to take reasonable steps to protect invitees from those dangers foreseeable from the uneven parking lot.").

argument below or on appeal that SCHOA had a duty to inspect the sinkhole, and therefore, we are impermissibly applying the "wrong for any reason rule." We respectfully disagree. The Lores alleged in their complaint that SCHOA breached its duty to maintain the Recreation Area, "thus creating hazardous conditions and other *hidden dangers* likely to cause bodily harm . . ." and that despite Mrs. Lore's repeated notices and pleas to maintain the Recreation Area, she was injured as a result of SCHOA's "entire want of care and *conscious indifference* to the consequences" of failing to do so.[11] Mrs. Lore emphasized that she repeatedly notified SCHOA about the hole on multiple occasions and that it failed to take any steps in response.

In its summary judgment brief to the trial court, SCHOA focused its argument on Mrs. Lore's knowledge, arguably implicitly conceding that it had constructive knowledge of the hazard.[12] As a result, Mrs. Lore's brief to the trial court also focused more on her knowledge of the hazard. She did, however, argue that the "[sinkhole] created by the erosive effect of the storm water runoff . . . was a hazardous condition[,] and through Mrs. Lore's pleas to the SCHOA, they knew of this hazard, but consistently *turned a blind eye*."[13] Mrs. Lore also referred to her deposition testimony, both to the trial court and on appeal, in which she stated that SCHOA had previously agreed to fill in the hole "to make it safe," but ultimately failed to do so. In their briefs to the trial court, both SCHOA and Mrs. Lore recite the rule that a plaintiff seeking to recover for injuries sustained in a slip and fall must prove that the defendant had actual *or constructive* knowledge of the hazard that caused the fall, citing *Robinson*.

SCHOA raises the issue of constructive knowledge in its appellate brief, ultimately arguing that it is "not at issue here." In the portion of their appellate brief addressing the personal injury claim, the Lores specifically argue that

> the net effect of the error committed by the trial court was to allow . . . SCHOA to stick its head in the sand about the pleas of the Lores to have the underlying problem of the water runoff fixed and to address the hole it caused. If this Court rewards . . . SCHOA by affirming the trial court on

---

[11] (Emphasis supplied.)

[12] Specifically, SCHOA argued that "even if the [h]ole resulted from [SCHOA's] negligen[t] maintenance of the water drainage system of which [SCHOA] may be presumed to have constructive knowledge, [Mrs. Lore's] knowledge of the hazard was at least equal to that of [SCHOA]."

[13] (Emphasis supplied.)

this issue, then forever more, the route to take for a property owner is to absolutely keep its eyes closed and absolutely do nothing when advised of a problem and say[,] "I know nothing — NOTHING!" That way[,] as a defendant, you cannot possibly know as much or more than someone coming on to your property.[14]

Finally, in their appellate reply brief, the Lores argue that *Ware County v. Medlock*[15] holds that "constructive knowledge of the overarching hazard does not allow the landowner to escape liability summarily. In *Medlock*, the Court did not let the landowner stick its head in the sand and plead ignorance. This Court should likewise not let . . . SCHOA stick its head in the sand."

Thus, in light of the aforementioned briefs and pleadings, we conclude that the issue of whether SCHOA had constructive knowledge of the hazards associated with the sinkhole and surrounding areas was raised both before the trial court and on appeal.

(b) *Mrs. Lore's Knowledge/Negligence.*

(i) SCHOA argues that Mrs. Lore had knowledge of the sinkhole that was equal to or greater than SCHOA's. But "[i]t is a plaintiff's knowledge of the *specific* hazard which precipitates the . . . fall which is determinative, not merely [her] knowledge of the generally prevailing hazardous conditions or of the hazardous conditions which [s]he observes and avoids."[16] Here, Mrs. Lore was clearly aware of the sinkhole and testified that she understood its danger to be the risk that someone would get too close to the edge and trip and fall into the hole. But she did not trip and fall into the sinkhole. Instead, she remained more than four feet away from the sinkhole and was injured when the ground she was standing on collapsed under her feet. While she knew that over the course of two years, the hole had continued to widen as a result of water erosion, there is no evidence that she had knowledge of the instability of the surrounding area such that it could suddenly collapse.[17] And we cannot conclude as a matter of law that the dangers associated with the ground collapsing four feet from the sinkhole were within the realm of an ordinary

---

[14] (Footnote omitted.)

[15] 192 Ga. App. 542 (385 SE2d 429) (1989).

[16] (Punctuation omitted; emphasis in original.) *Little v. Alliance Fire Protection*, 291 Ga. App. 116, 121 (661 SE2d 173) (2008).

[17] Again, although Mrs. Lore testified that she spent hundreds of hours investigating the sinkhole, SCHOA has pointed to no evidence regarding what her research revealed. Thus, evidence of her research is not sufficient to establish knowledge on the part of Mrs. Lore, given her direct testimony that she did not know about the instability of the ground area surrounding the hole.

person's knowledge.[18]

(ii) When determining whether an invitee failed to exercise ordinary care for her personal safety, " 'the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation.' "[19] In analyzing this issue, we are mindful of the Supreme Court's reminder that

> the "routine" issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed.[20]

Given the evidence in this case, construed in favor of the Lores, we conclude that the issue of whether Mrs. Lore exercised ordinary care for her own personal safety is a jury question.[21]

For the foregoing reasons, the trial court erred in granting summary judgment to SCHOA on the Lores' personal injury claim.

### Case No. A10A0013

2. SCHOA contends that the trial court erred in denying its motion for summary judgment as to the Lores' claims for trespass, nuisance, and negligence based on water runoff.[22] We agree.

---

[18] Compare *Means v. Marshalls of MA*, 243 Ga. App. 419, 420-421 (1) (532 SE2d 740) (2000) (trial court properly granted summary judgment to the defendant based on the plaintiff's actual knowledge because "the hazard, garment debris in plain view on a dressing room floor, was one which any person with ordinary, common sense would recognize as something that might cause a person to trip, slip, or fall").

[19] *Dumas v. Tripps of North Carolina*, 229 Ga. App. 814, 815 (1) (495 SE2d 129) (1997), quoting *Robinson*, 268 Ga. at 748 (2) (b).

[20] *Robinson*, 268 Ga. at 748 (2) (b).

[21] See *Nosiri v. Helm*, 301 Ga. App. 380, 381-382 (1) (687 SE2d 635) (2009) (phone cord across hallway); *Little*, 291 Ga. App. at 120-121 (ice in parking lot); *Barton v. City of Rome*, 271 Ga. App. 858, 861 (610 SE2d 566) (2005) (hole surrounding recessed dumpster); *Jackson*, 245 Ga. App. at 375 (2) (hole in pavement); *Dumas*, 229 Ga. App. at 815-816 (1) (ice in parking lot).

[22] The Lores argue in their response brief that SCHOA is precluded from appealing the trial court's denial of summary judgment as to nuisance and trespass based on the specific wording of SCHOA's single enumeration, which states that "[t]he trial court erred when it denied judgment in favor of Appellant, finding an issue of fact as to whether the Appellant's failure to act can be considered negligence in light of the record evidence and applicable law." We find this argument unpersuasive because SCHOA clearly enumerated as error the denial of summary judgment. See *Felix v. State*, 271 Ga. 534, 537-538 (523 SE2d 1) (1999) ("where it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, what errors are sought to be asserted upon appeal," an appellate court is required to consider the appeal) (punctuation omitted).

Causation is an essential element of nuisance, trespass, and negligence claims.[23]

> To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant.[24]

Here, pretermitting the efficacy of SCHOA's other defenses, the Lores have failed to demonstrate a causal connection between their damages and any action (or inaction) on the part of SCHOA that artificially increased the water runoff from its upper land to the Lores' lower property or caused the water to concentrate, collect, and discharge on their property in a harmful manner different from that which it would have received if it simply ran down upon it by the laws of gravity. Mrs. Lore's testimony that she observed water "coming specifically from the [SCHOA] property" from pipes is simply insufficient. There is no evidence regarding the amounts or sources of water runoff from the Recreation Area to the Lores' property before the property was developed. And the Lores have presented no testimony, expert or otherwise,[25] that any damage to their property was a result of an increase in quantity or concentration of water caused by SCHOA and different than if "[the water] simply ran down upon it from the upper [property] by the law of gravitation."[26] Rather, the Lores rely on the mere fact that the drainage ditch was not installed by the developer or SCHOA thereafter, but they do not causally link this fact to the soil and landscap-

---

[23] See *Walls v. Moreland Altobelli Assoc.*, 290 Ga. App. 199, 200 (1) (659 SE2d 418) (2008).

[24] (Citation and punctuation omitted.) *Grinold v. Farist*, 284 Ga. App. 120, 121-122 (1) (643 SE2d 253) (2007).

[25] In their brief, the Lores refer to photographs of the area and to an engineer's report, at least some of which were submitted as exhibits to depositions. However, none of these items appears in the appellate record.

[26] *Gill v. First Christian Church &c.*, 216 Ga. 454 (1) (117 SE2d 164) (1960). Compare *Rinzler v. Folsom*, 209 Ga. 549, 551-552 (1) (74 SE2d 661) (1953) (affirming an interlocutory injunction where the plaintiff submitted evidence, including an engineer's report, demonstrating that after construction on the defendants' property, water flowed therefrom onto the plaintiff's property in an amount much greater than before the construction).

ing washing away.[27] The Lores' failure to present evidence of proximate cause is fatal to their claims for nuisance, trespass, and negligence based on water runoff from SCHOA property. Accordingly, the trial court erred by denying summary judgment to SCHOA on these claims.[28]

*Judgments reversed. Miller, C. J., Phipps, P. J., Johnson, Blackburn, and Ellington, JJ., concur. Andrews, P. J., concurs in part and dissents in part.*

ANDREWS, Presiding Judge, concurring in part and dissenting in part.

Because Lore was equally aware of the possibility that the ground around the sinkhole could give way and because nowhere, either below or on appeal, is there any argument made of a "duty to inspect" the sinkhole, I respectfully dissent in Case No. A10A0012. I concur in Case No. A10A0013.

In Lore's brief in response to SCHOA's motion for summary judgment, her argument concerning SCHOA's knowledge of the dangerous condition was that SCHOA had knowledge of the problem because she told them about it. Specifically, Lore contended:

> So again the question is how can someone have "superior knowledge" of the existence of a definable problem[?] It either exists or it does not exist and you either know about it or do not know about it. It is for the jury to determine who had "superior knowledge" and not this Court as a matter of law. As noted earlier, the SCHOA had extraordinary knowledge about the hole as well as the stormwater runoff issue which caused the hole, because she [Lore] had provided them with the information they had requested.

This is no argument at all for the proposition that SCHOA had

---

[27] See *Cox v. Martin*, 207 Ga. 442 (2) (62 SE2d 164) (1950) (disapproving a jury instruction that effectively charged that the defendant would be liable for damages merely because water flowed from a down spout from his property onto the plaintiff's, "irrespective of whether such flow . . . increased the flow at a particular locality upon the plaintiff's land, or caused it to flow thereon in a manner different from simply running down upon it by the law of gravitation").

[28] See *Grinold*, 284 Ga. App. at 122-123 (2). Cf. *Walls*, 290 Ga. App. at 200-201 (1) (directed verdict proper because property owners failed to establish – through expert or other testimony or evidence – that the defendants' actions caused drainage problems on the plaintiffs' property). Compare *Green v. Eastland Homes*, 284 Ga. App. 643, 645-647 (1) (644 SE2d 479) (2007) (defendants not entitled to summary judgment because the plaintiff established that the developer defendants' activities contributed to excessive water runoff on the plaintiff's property by submitting the testimony of lay witnesses who observed that the flooding occurred after the development and expert testimony).

superior knowledge and does not even raise the issue whether SCHOA inspected or should have inspected the sinkhole.

Likewise, at the hearing on SCHOA's motion for summary judgment, Lore's counsel argued:

> As to the fall, it can be assumed that were it not for that water coming from that pipe on that hill and that ditch that is not there and no action whatsoever taken by the Homeowners Association to alleviate this over the course of four years after repeated pleadings, her accident and her injuries would not have occurred because there would not have been any collapse of the ground. She finds herself at the bottom of it in a split second because she was standing on solid ground. No indication that there was a problem where it undermined the ground where she was standing.

Thus, at oral argument, Lore made no mention of a duty to inspect because her contention to the trial court was that it was impossible for anyone to know that the ground would give way.

In light of this, the trial court correctly held that because Lore admitted that she had equal to or more knowledge about the hole and the dangerous condition of the property than anyone, and because Lore did not dispute this admission or point to evidence which contradicted this admission, then her knowledge was equal to or greater than that of SCHOA and therefore SCHOA was entitled to summary judgment on Lore's personal injury claim. To reverse the trial court on this issue would be to apply a wrong for any reason rule, which this Court does not do. See *Clark Atlanta Univ. v. Williams*, 288 Ga. App. 180, 182 (654 SE2d 402) (2007) (this Court "must refrain from reversing a ruling on a ground not raised or considered below").

Moreover, both below and on appeal, Lore consistently claimed that the basis of SCHOA's liability was its failure to control the runoff water which caused the problem of the unstable ground. In arguing that SCHOA should not be allowed to disclaim knowledge by "stick[ing] its head in the sand," she never claimed it should have inspected the sinkhole, but rather should have acknowledged the problems caused by the stormwater runoff. Accordingly, the record below shows no allegation of constructive superior knowledge due to SCHOA's failure to inspect the sinkhole. SCHOA was therefore never on notice that it needed to address the issue or to present evidence regarding what an inspection might have revealed about any propensity of the ground around the sinkhole to give way.

SCHOA would be entitled to summary judgment in any event, however, because, as stated above, an inspection would not have

given SCHOA any knowledge superior to what Lore had already pointed out and complained about during the course of this dispute, i.e., that the soil was being undermined by the water runoff and this is what caused the sinkhole and, since it was continuing, would cause further collapses in the area. The record also shows that Lore had additional knowledge of the specific danger posed by the area around the sinkhole. Lore testified at her deposition that she had watched the hole for two years and it "tripled in width" since she had been monitoring it.

Therefore, because, as Lore acknowledged, she had more knowledge about the dangerous condition of the sinkhole than anyone, because she knew that the stormwater runoff was causing the ground to become unstable in that area, and because she knew that the ground around the sinkhole was steadily giving way, I cannot agree with the majority's conclusion that "there is no evidence that she had knowledge of the instability of [that] area."

DECIDED JUNE 24, 2010 —
RECONSIDERATION DENIED JULY 13, 2010.

*Hall, Booth, Smith & Slover, Kenneth D. Jones, W. Scott Henwood*, for appellants.

*Weissman, Nowack, Curry & Wilco, Julie L. Sellers, Jason A. LoMonaco, Bovis, Kyle & Burch, Charles M. Medlin, Wayne S. Tartline*, for appellee.