ANDREWS, Presiding Judge,
dissenting in part.
I respectfully dissent to Division 2 because Plaintiffs’ expert appraiser has not offered an opinion that even addresses whether Plaintiffs’ property has suffered a diminution in market value caused by the alleged invasions at issue in this case and Plaintiffs have no other evidence of diminution in market value.
Plaintiffs’ appraiser testified that the fair market value of the Property would be $280,000 if the Toyo Tire facility were not located directly across the street but that its proximity to the Toyo Tire facility caused a market value depreciation of between 40 and 50 percent. The expert explained that in reaching his valuation conclusion, he relied in part on a paired sales analysis, which involved looking for pairs of sales of two similar houses, one of which was located in very close proximity to an industrial facility in or near Bartow County and the other far away from it but still in the same general market area. He ultimately relied on three paired sales, which included pairs of houses located close to and far from Dobbins Air Force Base, a Budweiser plant, and a Shaw plant. The expert testified that the purpose of the analysis was to measure whether there was “any diminution in value to a residential property from being close to industry or a plant or something like that.” He stated that the paired sales analysis showed that the closer a house is to an industry, the greater the depreciation. Based on that analysis and considering the general agricultural and residential character of the area, the expert testified that 35 to 40 percent of the reduction in value he found in this case comes from the mere presence of the Toyo Tire facility across the street from Plaintiffs’ home. The expert testified that the emission of particulates could cause a further reduction in value of up to 50 percent.
*221 The expert admitted that in reaching his conclusions he did not consider the amount of light coming onto the Property from the Toyo Tire facility or the amount of traffic, amount of noise, or any particular odors Plaintiffs were experiencing. He testified that he had never seen the complaint in this case or talked to Plaintiffs, and while he was aware of the general nature of the disturbances Plaintiffs were complaining about, he admitted, among other things, that he had no idea what kind of noise Plaintiffs were complaining about and could not recall with specificity anything Plaintiffs’ counsel had communicated to him about the odors affecting Plaintiffs. The expert did not visit any of the properties involved in his paired sales analysis, and, apart from noise and problems with airplanes dumping fuel from the air near Dobbins Air Force Base, he could not identify any factors other than proximity that would cause a reduction in value in properties close to the other industrial sites involved in his analysis. With respect to his opinion that particulate emissions from Toyo Tire could cause a further reduction in the Property’s value, the expert stated that he was relying on his experience in another case determining the depreciation in value to properties exposed to concrete dust from a nearby concrete recycling plant. But he testified that he had not done any specific analysis regarding the alleged particulate on the Property, stating only that “if in fact this is an analogous situation [to the case involving concrete dust]... there’s a reasonable probability it will sell. . . for 15 to 25 percent less.”
While Plaintiffs’ appraiser’s valuation may validly reflect the reduction of value that may result from a residential property’s proximity to an industrial site generally, that is not an issue presented in this case. Rather, the issue presented is whether the specific invasions allegedly caused by the Toyo Tire facility and its operations proximately caused a diminution in market value. Plaintiffs’ appraiser admittedly did not gather any evidence about the specific invasions involved here or conduct any analysis of whether the other industrial sites in his paired sales analysis involved similar situations. Although Plaintiffs’ appraiser has prior experience in a different case involving concrete dust, he admitted that he simply applied the same reduction in value finding from that case to Plaintiffs’ Property based on a hypothetical assumption that the situations were similar. Given the methodology involved in his appraisal, any opinion that Plaintiffs’ appraiser were to offer that the prospect of future invasions caused by the Toyo Tire facility has reduced the value of Plaintiffs’ Property would be speculative and without foundation or probative value. See Colonial Pipeline Co. v. Williams, 206 Ga. App. 303, 305 (425 SE2d 380) (1992). Likewise, to allow a jury to base a damages award on his valuation opinions would be to invite an exercise in speculation, since *222 the jury would be left to guesswork to determine what portion, if any, of the diminution in value he found could be attributed to the tortious conduct at issue.
Decided July 16, 2015
Archer & Lovell, David G. Archer; Morris, Manning & Martin, Robert P. Alpert, Brian M. Blythe, for appellant.
Akin & Tate, W. Morgan Akin, S. Lester Tate III, for appellees.
Causation is an essential element of nuisance [and] trespass . . . claims .... A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant.
(Punctuation and footnotes omitted.) Lore v. Suwanee Creek Homeowners Assn., 305 Ga. App. 165,172 (2) (699 SE2d 332) (2010). I would hold that the trial court erred in failing to grant partial summary judgment for Toyo Tire on the issue of Plaintiffs’ right to recover damages for prospective diminution in market value.
I am authorized to state that Judge Branch joins in this dissent.