A01A0119. CHRISTENSEN v. OVERSEAS PARTNERS CAPITAL, INC. et al.

(549 SE2d 784)

RUFFIN, Judge.

Lilian Christensen sued Overseas Partners Capital, Inc. ("Overseas Partners") and Sterling Parking, Inc. ("Sterling") for damages allegedly sustained when she fell in a parking deck. The trial court granted both defendants' motions for summary judgment. Christensen appeals, and we reverse.

To prevail on a motion for summary judgment, the movant must demonstrate that no genuine issues of material fact exist and that "the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law."[1] A defendant meets this burden by "showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case."[2] If the defendant discharges its burden, the plaintiff must point to specific evidence giving rise to a triable issue of fact.[3] On appeal, we review the trial court's summary judgment ruling de novo.[4]

Viewed favorably to Christensen, the evidence shows that, on January 29, 1997, she visited the Atlanta Financial Center to apply for a job. Christensen parked her car in the building's parking deck, which was owned by Overseas Partners and managed and operated by Sterling. She then walked up a handicap ramp from the parking

---

[1] (Punctuation omitted.) *Hannah v. Hampton Auto Parts*, 234 Ga. App. 392 (506 SE2d 910) (1998).

[2] (Punctuation omitted.) Id.

[3] Id.

[4] Id.

deck and entered the office building.[5] When Christensen returned to the parking deck, she walked back down the handicap ramp. At the bottom of the ramp, her foot "got caught on something," and she fell. Christensen initially thought that she had tripped on a step that she had not seen. She then noticed that the bottom of the handicap ramp was "sunken in" below the parking deck pavement, creating a one and one-half to two-inch height difference between the two surfaces. Christensen determined that she tripped on the uneven pavement at the bottom of the handicap ramp as she tried to step onto the parking deck.

At her deposition, Christensen agreed that she traversed the ramp without incident as she entered the building, but asserted that the "sunken in part" was not noticeable when "coming from the parking deck." She admitted that the height difference could be seen on the way down the ramp. She testified, however, that she "never saw" the "sunken in" concrete at the bottom of the ramp. Christensen stated: "I did not see it at all. I just walked down [the ramp]. There was [sic] a lot of people up and down, some going up, some going down. I really did not see it. If I had seen it, this would have never happened." Asked whether anything prevented her from seeing the height gap, Christensen responded: "Not other than maybe the traffic or I didn't look for it. Of course you don't look for something like that to be [there]."

In a premises liability case,

> proof of a fall, without more, does not give rise to liability on the part of a proprietor. The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an unreasonable risk of harm. Recovery is allowed only when the proprietor had knowledge and the invitee did not.[6]

The trial court determined that Christensen had equal knowledge of the open and obvious condition caused by the uneven pavement. On appeal, Christensen argues that fact questions remain as to the parties' relative knowledge and the reasonableness of their actions. We agree.

1. Christensen has pointed to no evidence that Overseas Partners or Sterling actually knew about the height gap at the end of the

---

[5] There is no evidence that Christensen chose to use the handicap ramp because she was disabled.

[6] (Citations and punctuation omitted.) *Hannah*, supra at 394.

handicap ramp. We have noted, however, that "[f]ailure to discover the defect through the exercise of reasonable care in inspecting the premises gives rise to constructive knowledge where the owner or occupier had an opportunity to discover the dangerous condition and to remedy it."[7] Christensen testified that the bottom of the handicap ramp had "sunk" below the parking deck, creating the height difference. A jury could infer that this concrete gap, a static condition, had existed "for a sufficient time for an inspection to discover it and to remove the danger."[8] Questions of fact remain, therefore, as to Overseas Partners' and Sterling's constructive knowledge of the alleged hazard.[9]

2. The evidence also raises issues of fact regarding Christensen's knowledge of the allegedly dangerous condition. The record contains no evidence that Christensen had actual knowledge of the uneven joint between the handicap ramp and the parking deck. Christensen clearly testified that she did not see the height difference.[10] She also indicated that, although she walked up the handicap ramp to enter the office building, the alleged defect was not noticeable at that point and did not present a similar hazard because pedestrians could simply walk over the one and one-half to two-inch drop in height. In a static defect case such as this, "when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have knowledge of it and cannot recover for a subsequent injury resulting therefrom."[11] Construing the evidence favorably to Christensen, however, we cannot conclude as a matter of law that Christensen negotiated the allegedly dangerous condition on her way up the ramp.

Furthermore, a question of fact remains as to whether Christensen should have known about or seen the "sunken" condition at the

---

[7] *CFUS Properties v. Thornton*, 246 Ga. App. 75, 76 (1) (539 SE2d 571) (2000).

[8] Id.

[9] Sterling contends that, under its management agreement with Overseas Partners, it had no duty to inspect the premises or perform structural repairs and thus could not have had constructive knowledge of the alleged hazard. Sterling was obligated, however, to perform routine and preventative maintenance in the parking deck. Furthermore, an owner or occupier of land must "exercise ordinary care in keeping the premises and approaches safe" for invitees. OCGA § 51-3-1. Sterling does not argue that it was not an "owner or occupier" of the parking deck. We cannot determine in this appeal, therefore, that it owed no duty to reasonably inspect the premises for defects.

[10] Compare *Gray v. Oliver*, 242 Ga. App. 533 (530 SE2d 241) (2000) (before her fall, plaintiff saw a curbside culvert in which she slipped and was familiar with this type of culvert); *Tanner v. Larango*, 232 Ga. App. 599 (502 SE2d 516) (1998) (plaintiff saw mossy area before she tripped on moss-filled gap between sidewalk and parking lot).

[11] (Punctuation omitted.) *Hannah*, supra at 394.

bottom of the ramp. In *Robinson v. Kroger Co.*,[12] our Supreme Court determined that

> an invitee's failure to exercise ordinary care is not established as a matter of law by the invitee's admission that he did not look at the site on which he placed his foot or that he could have seen the hazard had he visually examined the floor before taking the step which led to his downfall. Rather, the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation.[13]

The Supreme Court thus determined that an invitee need not "look continuously at the [ground] for defects because the invitee is entitled to assume that the owner/occupier has exercised reasonable care to make the premises safe."[14]

Although *Robinson* involved a slip and fall on a foreign substance, its analysis applies to static defect cases.[15] In this case, Christensen explained that a number of people were "going up [and] going down" the ramp and she did not see the height difference. As Christensen described, she just "followed the [pedestrian] traffic." Christensen's testimony about the pedestrian traffic in the area raises a question of fact as to whether, under the circumstances at the time of the fall, her failure to see the height gap was reasonable.[16] Summary judgment, therefore, was improper.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JUNE 4, 2001 ▮▮▮▮▮▮▮

*Kenneth L. Shigley*, for appellant.
*Webb, Carlock, Copeland, Semler & Stair, Douglas W. Smith,*

---

[12] 268 Ga. 735 (493 SE2d 403) (1997).

[13] Id. at 748 (2) (b).

[14] (Punctuation omitted.) *Shepard v. Winn Dixie Stores*, 241 Ga. App. 746, 749 (2) (527 SE2d 36) (2000).

[15] See *Freyer v. Silver*, 234 Ga. App. 243, 246-247 (3) (507 SE2d 7) (1998) (*"Freyer II"*). In its order granting summary judgment, the trial court cited a prior decision in *Freyer* for the proposition that " '[i]t is common knowledge that small cracks, holes and uneven spots often develop in pavement.' " See *Freyer v. Silver*, 227 Ga. App. 253, 256 (2) (488 SE2d 728) (1997) (*"Freyer I"*). In *Freyer II*, however, we vacated *Freyer I* and reconsidered our ruling in light of *Robinson v. Kroger Co*. See *Freyer II*, supra at 245 (1).

[16] See *Robinson*, supra; see also *Freyer II*, supra at 247.

*Nicholas M. Hollander, Goldner, Sommers, Scrudder & Bass,.*
*Thomas E. McCarter,* for appellees.