### A10A2069. McGARITY v. HART ELECTRIC MEMBERSHIP CORPORATION.
(706 SE2d 676)

PHIPPS, Presiding Judge.

Steve McGarity was injured when he made contact with a live electrical wire while visiting real property that was being advertised for sale. McGarity filed a personal injury action against Hart Electric Membership Corporation (HEMC), which had installed and maintained the electrical wire (on private property on which it had an easement), alleging that HEMC had negligently maintained and inspected the wire. HEMC moved for summary judgment, arguing that McGarity was a trespasser and therefore it was not liable

YALE LAW LIBRARY

because it did not wantonly and wilfully injure him; that it lacked actual or constructive knowledge of the condition which caused McGarity's injury; and that its policy of inspecting its electrical equipment every eight to ten years, a policy with which it complied in this case, was reasonable as a matter of law. The trial court granted the motion, holding that McGarity was, at best, a licensee, and that, as such, McGarity had failed to create an issue of fact as to whether HEMC wilfully or wantonly injured him or that HEMC breached a duty owed to him. McGarity appeals. For the reasons that follow, we reverse.

> We review de novo a trial court's grant of summary judgment, construing the evidence in a light most favorable to the nonmoving party. To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the nonmovant's favor, warrant judgment as a matter of law.[1]

Viewed in favor of McGarity, the record shows that on the morning of April 23, 2006, McGarity and a worker he hired to help him move household goods were en route to a store when the worker told McGarity he needed to use the restroom. McGarity told the worker, "I know a spot and I want to look [at it] anyway, it's for sale." McGarity suggested that they drive into a nearby subdivision, as he wanted "to look at some lots while it was convenient." McGarity was "always think[ing] about buying lots" on which to place mobile homes, and a road sign indicated that there were lots available for sale in the subdivision. They drove into the subdivision and got out of the car. As McGarity got out of the car he saw "just ahead," in an area overgrown with grass and weeds, an object that looked like a bicycle handlebar. McGarity walked over to the object and moved his foot around it to knock down the weeds; he did not realize it was an electrical wire. He "hit it" with his foot and then felt severe pain. McGarity suffered burns to his leg and was rushed to a hospital emergency room and then airlifted to a burn center.

The worker testified that after McGarity got out of the car, he heard a "boom," saw a flash of light, and saw McGarity airborne. He did not see the wire before McGarity made contact with it, but he saw it immediately thereafter. The worker stated that there was no box or concrete surrounding the wire and that it did not appear that anything had been around the wire for quite some time.

A sheriff's deputy testified that he went to the scene of the

---

[1] *Latson v. Boaz*, 278 Ga. 113 (598 SE2d 485) (2004) (citations omitted).

incident shortly after it occurred. The wire was located about ten to twelve feet from the roadway and protruded about two-and-a-half feet out of the ground. Vegetation surrounding the wire was thick. The deputy testified that he saw no concrete pad or box in the area.

A captain with the sheriff's department testified that, upon receiving a call from the hospital, he went to the scene of the incident to investigate. He observed that there was no concrete base nor a junction box or "green box" where the incident occurred. He had patrolled the area for a number of years and had never seen a junction box in the area where the incident occurred. He added that the brush had grown up around the wire and "it didn't look like there'd been a box or anything around it for a while." The captain stated that the street on which the incident occurred was open and there were no "No Trespassing" signs.

One of the HEMC linemen who went to the scene shortly after the incident testified that the wire was protruding from the ground and that it should not have been. He stated that the wire should have been in a junction box and the box should have been locked onto a concrete pad. He stated that the boxes are placed over electrical wires to keep people from coming in contact with the charged wires.

The safety director for HEMC testified that he went to the scene shortly after the incident occurred and that there was no junction box or concrete pad in place. He acknowledged that it is HEMC's duty to safely and properly install and inspect its electrical equipment, that there should have been a pad and a locked junction box in place to prevent the public from coming in contact with the wire, and that the condition of the equipment on the day of the incident presented a risk to the public. He conceded that someone coming into contact with a wire carrying 7,200 volts — like the wire with which McGarity came in contact — could be seriously injured or killed, and that HEMC bore sole responsibility for inspecting its wires. He added that inspections of the wires are necessary because "environmental issues" could occur and "the boxes themselves" needed to be maintained.

In its answers to McGarity's interrogatories, HEMC stated that it had installed the electrical wire at issue in August 2000 and thereafter had inspected its electrical distribution systems on about a ten-year basis.

In support of its summary judgment motion, HEMC submitted an affidavit from an electrical engineer, as an expert in electric utility design engineering, stating that, based on his interviews and reviews of HEMC's records, inter alia, the equipment at issue was installed pursuant to industry practice and was inspected after installation. He opined that HEMC's practice of inspecting its electrical equipment every "nine to ten years" was in compliance with the National

YALE LAW LIBRARY

Electrical Safety Code (NESC).

HEMC's vice president of engineering and operation testified that the electrical equipment in the subdivision was inspected in January 2001, which he said confirmed that a junction box had been installed on the lot at issue. He added that the box might have been stolen, and that electrical wiring had been stolen from the subdivision previously.

Another HEMC employee testified that when he mapped the locations of junction boxes in the subdivision on August 22, 2000, a junction box was in place at the location at issue.

1. McGarity contends that the trial court erred in finding as a matter of law that he was on the premises as "at best, a licensee" when there was evidence from which a jury could find that he was an invitee. We point out that HEMC does not argue on appeal, as it did below, that McGarity was a trespasser at the time of the incident; indeed, HEMC states that the trial court properly granted summary judgment upon finding, inter alia, that McGarity was at best a licensee at the time of the incident. Accordingly, we need not discuss whether there also was evidence that he was a trespasser.[2]

The threshold issue in a negligence action is whether and to what extent the defendant owes a legal duty to the plaintiff.[3] It is McGarity's status as an invitee, licensee, or trespasser that determines the duty of care owed him by HEMC.[4] For instance, the owner or occupier of land has a duty to exercise ordinary care to keep the premises and approaches safe for an invitee, while the owner or occupier has a duty not to wilfully or wantonly injure a licensee after the owner or occupier has become aware of or should have anticipated the presence of the licensee near the peril.[5] The trial court's ruling as to HEMC's entitlement to summary judgment was based in part on its finding that McGarity was a licensee.

An invitee is one who, by express or implied invitation, has been induced or led to come upon premises for any lawful purpose; he may be deemed an invitee if his presence on the property is of mutual benefit to him and the owner or occupier.[6] A licensee is one who is permitted, either expressly or impliedly, to go on the premises of another, but merely for his own interest, convenience, or gratifica-

---

[2] See *Matlack v. Cobb Elec. Membership Corp.*, 289 Ga. App. 632, 633-634 (658 SE2d 137) (2008) (a trespasser is one who, though peacefully or by mistake, wrongfully enters upon property owned or occupied by another).

[3] *Barrett v. Ga. Dept. of Transp.*, 304 Ga. App. 667, 669 (1) (697 SE2d 217) (2010).

[4] *Matlack*, supra at 633.

[5] See *Jarrell v. JDC & Assocs.*, 296 Ga. App. 523, 525 (675 SE2d 278) (2009); *Rozy Investments v. Bristow*, 276 Ga. App. 278, 279 (4) (623 SE2d 171) (2005).

[6] See *Matlack*, supra at 634; *Jones v. Barrow*, 304 Ga. App. 337, 339 (1) (696 SE2d 363) (2010).

tion.[7] In deciding whether there is mutual benefit and a visitor is an invitee, the determining question is whether the owner or occupier of the premises will receive some benefit, real or supposed, or has some interest in the purpose of the visit.[8] Stated another way, the question is whether the person coming onto the premises had present business relations with the owner or occupier which would render his presence of mutual benefit to both, or whether his presence was for his own convenience, or was for business with someone other than the owner or occupier.[9] If the relationship was one of mutual interest to the parties, the injured party was an invitee of the owner.[10] Monetary consideration is not essential to invitee status.[11] And the fact that the parties were not actually in a contractual relationship at the time of the incident does not preclude the plaintiff from being an invitee.[12] It is sufficient to show that each party was moved by a lawful purpose or interest in the object and subject matter of the invitation.[13]

HEMC urges that McGarity's stated purpose for visiting the property, to look at property for sale in addition to using the location as a restroom, was not credible. But credibility is an issue for the finder of fact,[14] and there was evidence that McGarity visited the property to look at real property that was being offered for sale; in fact, the trial court stated in its findings of fact that McGarity and the worker entered upon the property "to look at it because he was in the market for a lot and to urinate." While HEMC urges that McGarity got out of the car only to change drivers and not to view the property, the evidence does not conclusively establish that assertion. A jury would be authorized to conclude that the property owner, who was advertising the property for sale, would want a person looking to buy property to visit the property and assess whether he was

---

[7] *Matlack*, supra.

[8] *Mut. Life Ins. Co. &c. v. Churchwell*, 221 Ga. App. 312, 313 (2) (471 SE2d 267) (1996); *D. J. Powers Co. v. Hendry*, 190 Ga. App. 297, 298 (379 SE2d 1) (1989); see *Hicks v. M. H. A., Inc.*, 107 Ga. App. 290, 292 (2) (b), n. 1 (129 SE2d 817) (1963) (plaintiff who visited tenants of shopping center owner/defendant was an invitee because success of shopping center venture depended upon whether tenants did a satisfactory volume of business).

[9] *Mut. Life Ins. Co.*, supra; *Moore-Sapp Investors v. Richards*, 240 Ga. App. 798, 799 (1) (a) (522 SE2d 739) (1999).

[10] See *Flint River Cotton Mills v. Colley*, 71 Ga. App. 288, 291 (30 SE2d 426) (1944) (on motion for rehearing).

[11] *Frankel v. Antman*, 157 Ga. App. 26, 27 (276 SE2d 87) (1981); see *Walker v. Daniels*, 200 Ga. App. 150, 154 (1) (407 SE2d 70) (1991), rev'd on other grounds, *Bd. of Regents &c. v. Daniels*, 264 Ga. 328, 329 (446 SE2d 735) (1994).

[12] *Findley v. Lipsitz*, 106 Ga. App. 24, 27 (1) (126 SE2d 299) (1962).

[13] *Burkhead v. American Legion &c.*, 175 Ga. App. 56-57 (332 SE2d 311) (1985).

[14] See *Holmes v. Achor Center*, 249 Ga. App. 184, 192 (2) (b) (547 SE2d 332) (2001).

interested in purchasing it.[15] Thus, there was evidence of the requisite mutuality of interest, advantage or potential benefit which would support a determination that McGarity was not on the property merely for his own interest or convenience.[16] Evidence of McGarity's status as an invitee was not nullified by evidence that he had a dual purpose for being on the property,[17] or by evidence that he may not have had a present intent to purchase the property.[18] A jury could find from the evidence that the property owner received the benefit of a potential sale from McGarity's visit to the property, and that McGarity was an invitee rather than a licensee.[19]

HEMC argues that, to be an invitee, McGarity was required to demonstrate that he was on the property to further the business of *HEMC*. But the authority it cites to support this contention, *Jarrell v. JDC & Assocs.*,[20] is inapposite; in that case, the plaintiff was deemed a licensee as a matter of law where he visited the property to review work performed by one of his employer's vendors, not in connection with the business of the property owner or occupier.[21] Here, there was evidence that McGarity visited the property in connection with the business of the property owner. HEMC points to no authority requiring a plaintiff who was injured due to defective utility equipment to demonstrate that he was an invitee of the utility company (which occupied the property pursuant to an easement) rather than an invitee of the property owner.

There also was evidence that McGarity was a licensee, as HEMC concedes. Consequently, summary judgment is precluded.[22] A jury should decide whether McGarity was a licensee or an invitee, and then consider HEMC's liability as occupier of the premises under the appropriate premises liability standard.[23]

---

[15] See generally *Atkins v. Tri-Cities Steel*, 166 Ga. App. 349, 350-351 (304 SE2d 409) (1983) (summary judgment not proper because jury was authorized to conclude that decedent was invitee as there was evidence that owner would want him to be visible on premises) (physical precedent only).

[16] See *Frankel*, supra; *Findley*, supra.

[17] See *Brown v. Hall*, 81 Ga. App. 874, 881 (60 SE2d 414) (1950).

[18] See *Howard v. Gram Corp.*, 268 Ga. App. 466, 469 (602 SE2d 241) (2004) (even if the injured party does not have a present intent to make a purchase upon entry, the existence of a possible economic exchange is of mutual benefit to both parties); *Mut. Life Ins. Co.*, supra (visitor is an invitee where owner or occupier will receive some benefit from the visit, real or supposed).

[19] See *Brown*, supra.

[20] Supra.

[21] Id.

[22] See *Hartley v. Macon Bacon Tune*, 234 Ga. App. 815, 817-818 (507 SE2d 259) (1998); *Bishop v. Mangal Bhai Enterprises*, 194 Ga. App. 874, 876 (2) (392 SE2d 535) (1990).

[23] Note that HEMC concedes in its brief that it was an occupier of the land. See generally *Matlack*, supra (employing premises liability analysis in negligence action brought against power company as owner/occupier of land where plaintiff struck guy wire on private property

2. McGarity contends that a jury issue was presented as to whether HEMC exercised ordinary care to keep the premises safe when there was evidence that it failed to conduct reasonable inspections of its electrical equipment. Because we cannot conclude as a matter of law that HEMC's inspection procedure was reasonable under the circumstances, we agree.

Assuming, without deciding, that McGarity was an invitee, the following standard of care would apply. Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such person for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.[24] A power company is charged with the duty of exercising ordinary care in the construction and maintenance of its wires, poles, transformers and equipment.[25] Here, there was evidence that the electrical wire presented a safety hazard, that the wire should have been covered with a junction box and placed on a concrete pad, and that at the time of McGarity's injury it was not. There was no evidence that any inspection was performed for at least five years between the initial post-installation inspection and the incident.

Evidence concerning the reasonableness of HEMC's inspection policy included the following: HEMC's safety director testified that HEMC is subject to NESC rules regarding installation and maintenance of underground wires, and that all the NESC requires is inspections "as experience has shown needed." The safety director understood that to mean "from past experience how often you need to look at the wire and do an inspection," and stated that HEMC was in compliance with that requirement.

HEMC's vice president of engineering and operation testified that HEMC was responsible for installing, maintaining and conducting periodic inspections of the equipment, and that HEMC inspects its equipment upon installation and then on an eight-to-ten-year basis. He averred that this interval complied with NESC standards, which do not specify any particular time interval for inspections, but require power companies to perform inspections based on what their experiences have shown to be necessary. HEMC's expert witness opined that HEMC's policy of inspecting its electrical equipment every "nine to ten years" is reasonable and consistent with industry standards, namely the NESC.

Although he argued that expert testimony on the issue was not

---

on which power company had easement).

[24] OCGA § 51-3-1.

[25] *Schuessler v. Bennett*, 287 Ga. App. 880, 886 (3) (652 SE2d 884) (2007); *Collins v. Altamaha Elec. Membership Corp.*, 151 Ga. App. 491-492 (1) (A) (260 SE2d 540) (1979).

required, McGarity argued that the following testimony presented an issue of fact as to the reasonableness of HEMC's inspection procedure. HEMC's safety director testified that (1) HEMC is accredited through the National Rural Electric Cooperative Association (NRECA); (2) to maintain its accreditation (or at least to receive NRECA's highest score) HEMC must inspect 30 percent of its underground wires each year; (3) in some years HEMC inspects less than 30 percent of its underground wires; and (4) it is important to inspect and maintain the junction boxes because "they do rust and they do get knocked off every now and then."

HEMC claims that its witness's testimony regarding the NRECA guidelines was not admissible because no witness introduced a copy of the standards into evidence.[26] But even assuming, arguendo, that the testimony of HEMC's witness was insufficient to deem the NRECA guidelines admissible, the argument that to avoid summary judgment McGarity was required to present expert testimony on the point is without merit. Contrary to the trial court's finding, the requirement for expert testimony is not absolute and depends upon the circumstances of the case.[27] Indeed, some acts performed by professionals are acts of simple negligence which would not require proof by expert evidence.[28] McGarity's claims of negligence do not involve issues that require highly specialized expert knowledge with respect to which a layperson can have no knowledge at all.[29] Under the circumstances presented here, we find that McGarity's claims require that a jury determine the reasonableness of the *frequency* of HEMC's inspections of its live electrical wires, not the *quality* of any such inspections. The reasonableness of the frequency of inspections is routinely decided by jurors.[30] A jury can assess whether the circumstances of this case required more frequent inspections, taking into account, for example, the nature of the business, the nature of the dangerous condition, and the property location.[31] Here, a live electrical wire was placed just feet from the roadway in a subdivision with lots available for sale, HEMC installed the underground wire such that it protruded from the ground, and HEMC knew that its equipment had been previously stolen from that

---

[26] See *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. 578, 581 (2) (b) (521 SE2d 600) (1999) (private standards are not admissible without expert testimony to identify, authenticate and explain them).

[27] See *Ga. Real Estate &c. v. Krouse*, 299 Ga. App. 73, 76 (1) (681 SE2d 737) (2009).

[28] *Kneip v. Southern Engineering Co.*, 260 Ga. 409, 410 (3) (395 SE2d 809) (1990).

[29] Compare *Jordan, Jones & Goulding, Inc. v. Wilson*, 197 Ga. App. 354, 355-356 (1) (398 SE2d 385) (1990).

[30] See *J. H. Harvey Co. v. Reddick*, 240 Ga. App. 466, 471 (1) (b) (522 SE2d 749) (1999).

[31] See generally id.; *Three Notch Elec. Membership Corp. v. Bush*, 190 Ga. App. 858-859 (1) (380 SE2d 720) (1989).

subdivision and that junction boxes become rusted and occasionally get "knocked off." Evidence showed that the box and pad were missing long enough for the wire to have become overgrown with weeds. A jury could find without expert testimony that HEMC had a duty to conduct more frequent inspections to ensure that its live electrical wires were not left uncovered.[32]

The fact that HEMC may have complied with its own interpretation of NESC's vague requirement regarding the frequency of inspections ("as experience has shown needed") is not determinative. First, McGarity has not alleged that HEMC was negligent because it violated an NESC standard.[33]

Second, as stated above, a power company owes a duty to maintain its equipment in such a manner and at such a location as not to injure persons who might reasonably be expected to come in contact with such lines.[34] From the evidence presented, a jury could conclude that HEMC was negligent in failing to discover the exposed live wire through more frequent inspection of its equipment.[35] Even if McGarity was a licensee rather than an invitee, HEMC could be liable because "it is usually wilful or wanton not to exercise ordinary care to prevent injury to a person who is known to be or may reasonably be expected to be within a hidden peril on one's premises,"[36] and there was evidence from which a jury could find that McGarity's presence on the property (which was being advertised for sale) may reasonably have been expected. Thus, there was evidence of a material issue of fact regarding whether HEMC exercised the requisite degree of care, and the trial court erred in granting HEMC's motion for summary judgment.

3. McGarity contends that a question of fact remains as to the parties' relative knowledge of the hazard and the reasonableness of their actions. We agree.

Where the injured party is an invitee, failure to discover a defect through the exercise of reasonable care in inspecting the premises gives rise to constructive knowledge where the owner or occupier had an opportunity to discover the dangerous condition and to

---

[32] See generally *Ga. Real Estate &c.*, supra; *J. H. Harvey Co.*, supra; *Three Notch Elec. Membership Corp.*, supra (question of fact presented as to whether maintenance of power line without modification or warning constituted negligence where there was evidence that power company did not negligently install power lines, but had notice of dangerous change in conditions).

[33] Compare *Lynch v. Ga. Power Co.*, 185 Ga. App. 256 (363 SE2d 777) (1987).

[34] *Habersham Elec. Membership Corp. v. Dalton*, 170 Ga. App. 483, 485 (317 SE2d 312) (1984).

[35] See *Schuessler*, supra at 885 (3).

[36] See *Hartley*, supra at 817.

remedy it.[37] A jury could find that the dangerous condition had existed for a sufficient time for an inspection to have discovered it and for HEMC to have removed the danger.[38] Questions of fact remain, therefore, as to HEMC's constructive knowledge of the hazard.[39] Moreover, McGarity testified that he did not know that the object he made contact with was an electrical wire. Under the facts presented, whether McGarity exercised reasonable care for his own safety is a question for the jury.[40]

*Judgment reversed. Miller, P. J., and McFadden, J., concur.*

DECIDED FEBRUARY 8, 2011 — 

*Law & Moran, Peter A. Law, Jeffrey P. Shiver*, for appellant.
*McNatt, Greene & Peterson, Hugh B. McNatt, Troy L. Greene, Walter J. Gordon, Sr., Timothy K. Hall*, for appellee.

---

[37] *Christensen v. Overseas Partners Capital*, 249 Ga. App. 827, 829 (1) (549 SE2d 784) (2001).

[38] See id.

[39] *Schuessler*, supra at 886-887 (3); *Christensen*, supra.

[40] See generally *Howard*, supra; *Pylant v. Samuels, Inc.*, 262 Ga. App. 358, 361 (2) (585 SE2d 696) (2003).

