**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 9, 2016**

# In the Court of Appeals of Georgia

A16A0318. BARCLAY v. STEPHENSON et al.

A16A0319. JOHNSON et al. v. GOVERNMENT EMPLOYEES INSURANCE COMPANY.

A16A0320. STEPHENSON et al. v. GOVERNMENT EMPLOYEES INSURANCE COMPANY.

A16A0321. JOHNSON et al. v. STEPHENSON et al.

PHIPPS, Presiding Judge.

Thomas Stephenson and his wife sued Mary Barclay, Carol Johnson, and Thomas Johnson for damages sustained when Stephenson fell on property belonging to Barclay and occupied by the Johnsons.[1] Barclay's umbrella liability insurance carrier, Government Employees Insurance Company ("GEICO"), later filed a

---

[1] The personal injury action also named Barclay's husband, James Barclay, as a defendant. However, he died during the pendency of the lawsuit, and it does not appear that his estate or its representative has joined the appeals.

declaratory judgment action, seeking a determination of coverage. Following discovery, Barclay and the Johnsons moved for summary judgment in the personal injury suit, and GEICO sought summary judgment in the declaratory judgment action. The trial court denied the motions filed by Barclay and the Johnsons, but granted GEICO's motion. These appeals followed. For reasons that follow, we reverse the denials of summary judgment in the personal injury action and affirm the grant of summary judgment to GEICO.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] We review a trial court's summary judgment ruling de novo, construing the evidence and all reasonable inferences favorably to the nonmovant.[3]

So viewed, the record shows that the Johnsons leased a home from Barclay on Kensington Drive in Marietta. The Johnsons also owned a house, which they rented

---

[2] OCGA § 9-11-56 (c).

[3] See *Forest Cove Apartments v. Wilson*, 333 Ga. App. 731-732 (776 SE2d 664) (2015); *Pirkle v. QuikTrip*, 325 Ga. App. 597, 599 (2) (754 SE2d 387) (2014).

2

to Stephenson and his wife. Occasionally, Stephenson performed work for the Johnsons in exchange for a credit against his rent payment.

In August 2008, Carol Johnson asked Stephenson to remove a chainsaw that had become pinned in a tree under a partially-cut limb at the Kensington Drive property. Stephenson agreed and, on September 6, 2008, arrived at the property with an extension ladder. Thomas Johnson showed the tree to Stephenson, who asserted that he needed to cut the limb to remove the chainsaw. Stephenson erected the ladder, tethered it to the tree with a rope, and began cutting the limb with a pole pruner. The work required him to move and re-tether the ladder several times to reach different parts of the tree.

Stephenson's pole pruner stopped working at some point, and he briefly left the Kensington Drive property to repair it. During the 20 to 30 minutes he was away, the Johnsons removed cut branches and debris from under the tree. When Stephenson returned, he quickly realized that he needed to move the ladder again. According to Thomas Johnson, Stephenson climbed the ladder, untied it from the tree, and began "jumping it" to the next place he planned to cut. Stephenson denied "jumping" the ladder, which he characterized as "an extremely dangerous thing to do." Without

3

dispute, however, he untethered the ladder and it collapsed. Stephenson hung briefly from the tree, then fell to the ground, injuring his ankle.

On August 27, 2010, Stephenson and his wife sued the Johnsons and Barclay for over $1,000,000 in damages. Stephenson claimed that the Johnsons had failed to keep the Kensington Drive property reasonably safe and had caused his fall. He also alleged a premises liability claim against Barclay and asserted that she had negligently entrusted the property to the Johnsons. In addition, Stephenson's wife asserted a loss of consortium claim against Barclay and the Johnsons. While the personal injury suit was pending, GEICO filed a declaratory judgment action against all parties, seeking resolution of coverage issues relating to the umbrella liability insurance policy issued to Barclay.

Barclay and the Johnsons subsequently filed motions for summary judgment in the personal injury action, and GEICO moved for summary judgment in the declaratory judgment suit. Although the trial court denied the Barclay/Johnson motions, it issued certificates of immediate review, and we granted their requests for interlocutory appeal. Barclay's appeal has been docketed as Case No. A16A0318, and the Johnsons' appeal has been docketed as Case No. A16A0321. The trial court also awarded summary judgment to GEICO in the declaratory judgment action, generating

4

two additional appeals. In Case No. A16A0319, the Johnsons challenge the grant of summary judgment to GEICO, and the Stephensons appeal the same ruling in Case No. A16A0320.

*Case No. A16A0321*[4]

1. The Johnsons argue that the trial court erred in denying their motion for summary judgment as to the Stephensons' personal injury claims. We agree.

"Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."[5] The true basis for liability is the owner or occupier's superior knowledge of a perilous condition on the property.[6] Recovery may result when the condition is known to the owner or occupier, but not

---

[4] For ease of discussion, we will address the Johnsons' appeal in the personal injury suit first.

[5] OCGA § 51-3-1; see also *McGarity v. Hart Elec. Membership Corp.*, 307 Ga. App. 739, 742 (1) (706 SE2d 676) (2011) ("An invitee is one who, by express or implied invitation, has been induced or led to come upon premises for any lawful purpose; he may be deemed an invitee if his presence on the property is of mutual benefit to him and the owner or occupier.") (footnote omitted).

[6] See *Forest Cove Apartments*, supra at 734.

5

the person injured.[7] Thus, "[w]here the uncontroverted evidence demonstrates that the invitee had knowledge of the dangerous condition equal to that of the premises [occupier], there can be no recovery by the invitee for injuries resulting from the dangerous condition."[8]

Stephenson was injured when the extension ladder he was using collapsed, causing him to fall. The injury-causing condition, therefore, involved the ladder. Without dispute, however, Stephenson brought the ladder onto the Kensington Drive property and erected it. The evidence further shows that he had previously worked with this ladder; had set up, climbed, and readjusted the ladder several times without incident before it collapsed; and was familiar with its use. Stephenson had at least equal – if not greater – knowledge of the ladder and its use than the Johnsons.[9]

Nevertheless, Stephenson and his wife contend that questions of fact remain as to the Johnsons' liability because the Johnsons must have bumped or hit the ladder

---

[7] See id.

[8] Id. (citation omitted).

[9] See id. (contractor who fell through floor while repairing it had equal knowledge of hazard posed by damaged floor joists); *Yon v. Shimeall*, 257 Ga. App. 845, 847 (1) (572 SE2d 694) (2002) (plaintiff who had previously used staircase had equal knowledge of its alleged defects).

when Stephenson left to fix the pole pruner, destabilizing it and ultimately causing it to collapse. According to the Stephensons, "there is no other rational explanation for the ladder collapsing."

The Johnsons, however, flatly denied moving, touching, or otherwise disturbing the ladder. They admitted removing branches and debris from the ground under the tree, but Thomas Johnson stated that he did not "go over by the ladder." And Carol Johnson testified that the ladder "wasn't moved while [Stephenson] was gone." Stephenson and his wife have pointed to no evidence controverting the Johnsons' testimony. Moreover, although Stephenson asserted that "[i]n [his] judgment, the base of the ladder had been accidentally bumped," he did not see anyone touch the ladder, it "looked intact" before it collapsed, and it did not appear to have been moved before he climbed it the final time.

"[G]uesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment."[10] Thus, "[w]here a plaintiff's proof of causation in a negligence case is based on mere possibilities, or the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it is the duty of the trial

---

[10] *Forest Cove Apartments*, supra at 737 (citation and punctuation omitted).

7

court to grant summary judgment for the defendant."[11] Stephenson's "feelings" and "viewpoint" about how the ladder collapsed do not raise factual questions as to causation. And his speculation that the Johnsons were intoxicated when he fell proves nothing.

Stephenson and his wife offered no evidence that the Johnsons disturbed the ladder before it collapsed, and the Johnsons unequivocally denied touching it. The evidence further shows that Stephenson had moved and repositioned the ladder multiple times that day. To conclude, in the face of such evidence, that the Johnsons caused the ladder to fall would be mere conjecture. The trial court, therefore, erred in denying the Johnsons' motion for summary judgment on Stephenson's premises liability claim,[12] as well as his wife's derivative claim for loss of consortium.[13]

---

[11] *Pirkle*, supra at 600-601 (2) (a) (citation omitted).

[12] See *Bryan Bank & Trust v. Steele*, 326 Ga. App. 13, 15 (1) (755 SE2d 828) (2014) (property owner entitled to summary judgment where claimant offered only speculation about what caused her to fall on property); *Pirkle*, supra at 601 (2) (a) (claimant cannot avoid summary judgment through speculation); *Benson-Jones v. Sysco Food Svcs. of Atlanta*, 287 Ga. App. 579, 583 (1) (b) (651 SE2d 839) (2007) ("An inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility.") (punctuation and footnote omitted).

[13] See *Briddle v. Cornerstone Lodge of America*, 288 Ga. App. 353, 355 (654 SE2d 188) (2007) (husband's loss of consortium claim not viable where defendant

8

2. Barclay argues that she is entitled to summary judgment because no questions of material fact remain as to her liability. As noted above, the claims against Barclay rest on theories of premises liability and negligent entrustment. Stephenson and his wife allege that Barclay failed to keep her property in repair and negligently entrusted it to the Johnsons, who were known alcoholics. Neither theory supports recovery here.

(a) *Premises liability.* Barclay did not live on the Kensington Drive property. She leased it to the Johnsons, who were responsible for the premises. Given these circumstances, Barclay's duties are controlled by OCGA § 44-7-14, which governs tort liability for an out-of-possession landlord.[14] Under that Code section:

> Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective

---

entitled to summary judgment on wife's personal injury claims).

[14] See *Boone v. Udoto*, 323 Ga. App. 482, 487 (3) (747 SE2d 76) (2013) (landlord that had no responsibility for maintaining and repairing the premises was "out-of-possession").

construction or for damages arising from the failure to keep the premises in repair.[15]

Barclay, therefore, may be held liable only for damages caused by "failure to repair the premises or faulty construction of the premises."[16] Although the allegations are not completely clear, Stephenson and his wife apparently contend that Barclay failed to repair a defect in the tree from which Stephenson fell. The term "repair," however, "contemplates an existing structure which has become imperfect, and means to supply in the original structure that which is lost or destroyed, and thereby restore it to the condition in which it originally existed, as near as may be."[17] Stephenson and his wife have not cited any evidence that the tree had become "imperfect" or required repair. Rather, a chainsaw was pinned under a tree branch, and Stephenson was asked to dislodged it. We question whether such circumstances fall within the concept of "repair."[18]

---

[15] OCGA § 44-7-14.

[16] *Gainey v. Smacky's Investments*, 287 Ga. App. 529, 530 (2) (652 SE2d 167) (2007) (punctuation and footnote omitted).

[17] Id. at 530 (2) (a) (punctuation and footnote omitted).

[18] See id.

Moreover, even if the tree could be viewed as defective and in need of repair, the record shows that Stephenson was not injured by any such defect. On the contrary, he fell when the ladder he brought to the property collapsed under him. Barclay's alleged failure to repair the tree, therefore, did not damage Stephenson.[19]

Asserting that the Johnsons must have dislodged the ladder, causing it to collapse, Stephenson and his wife also argue that Barclay is somehow responsible as landlord for their purported actions. But an out-of-possession landlord is "not liable to third parties for damages arising from the tenant's negligence."[20] Regardless of any actions taken by the Johnsons, Barclay may be held liable only for damages resulting from faulty construction or a failure to repair. Furthermore, as discussed in Division 1, Stephenson and his wife have cited no evidence that the Johnsons caused the ladder

---

[19] See *Ranwez v. Roberts*, 268 Ga. App. 80, 82-83 (1) (601 SE2d 449) (2004) (out-of-possession landlord not liable to third party for damages caused by tenant's dog where damages resulted not from faulty construction or failure to repair fence, but from tenant's failure to keep dog inside fence).

[20] *Boone*, supra at 486 (3) (punctuation and footnote omitted). See also OCGA § 44-7-14.

to collapse. The trial court, therefore, erred in denying Barclay's motion for summary judgment on the premises liability claim.[21]

(b) *Negligent entrustment*. Stephenson and his wife also allege that Barclay negligently entrusted the Johnsons to supervise her property. Claiming that the Johnsons are alcoholics, the Stephensons contend that "[t]his negligent entrustment posed a foreseeable and unreasonable risk of harm to workers because [Barclay] knew or should have known that because of [the Johnsons'] drunkenness, they would pose a danger to workers on the premises."

"Under the doctrine of negligent entrustment, a party is liable if he entrusts someone with an instrumentality, with actual knowledge that the person to whom he has entrusted the instrumentality is incompetent by reason of his age or inexperience, or his physical or mental condition, or his known habit of recklessness."[22] This doctrine typically applies when a vehicle owner entrusts a vehicle to an allegedly

---

[21] See *Ranwez*, supra at 83 (1) (summary judgment for out-of-possession landlord appropriate where evidence showed as a matter of law that landlord did not violate duty owed to third party injured by tenant's dog).

[22] *Gunn v. Booker*, 259 Ga. 343, 347 (3) (381 SE2d 286) (1989) (citations and footnote omitted).

12

incompetent driver.[23] It has no application in this case, which does not involve entrustment of any type of instrumentality, such as a vehicle. Barclay, therefore, was entitled to summary judgment on the negligent entrustment claim.

(c) *Loss of consortium*. Because summary judgment should have been granted to Barclay on the personal injury allegations, she is also entitled to summary judgment on the loss of consortium claim filed by Stephenson's wife.[24]

*Case Nos. A16A0319 & A16A0320*

3. In these appeals, the Stephensons and the Johnsons appeal the grant of summary judgment to GEICO in the declaratory judgment action. The record shows that Barclay and her husband had an umbrella liability insurance policy issued by GEICO in effect when Stephenson was injured at the Kensington Drive property on September 6, 2008. In the declaratory judgment action, GEICO alleged, among other things, that it "may not have been provided with proper notice" of the Stephensons'

---

[23] See, e.g., id. at 346-347 (3) (negligent entrustment of boat); *McManus v. Taylor*, 326 Ga. App. 477, 480 (1) (756 SE2d 709) (2014) (automobile); *Ga. Messenger Svc. v. Bradley*, 302 Ga. App. 247, 250 (2) (b) (690 SE2d 888) (2010) (truck).

[24] See *Briddle*, supra.

13

claims. The trial court agreed that notice was lacking and granted summary judgment to GEICO.

(a) The Stephensons and the Johnsons argue that summary judgment was improper because GEICO denied coverage, foreclosing relief under the Declaratory Judgment Act.[25] It is true that an insurer cannot deny coverage, then seek a declaratory judgment as to rights and responsibilities under its policy.[26] The record, however, contains no evidence that GEICO denied coverage. On the contrary, it stated in its declaratory judgment complaint that coverage was uncertain and that the policy might not cover the claims. Given the uncertainty, it requested a declaration of its rights and responsibilities. Declaratory relief was appropriate here.[27]

---

[25] See OCGA § 9-4-1 et seq.

[26] See *Builders Ins. Group v. Ker-Wil Enterprises*, 274 Ga. App. 522, 523 (2) (618 SE2d 160) (2005).

[27] See *Atlanta Cas. Co. v. Fountain*, 262 Ga. 16, 17-18 (413 SE2d 450) (1992) ("[W]hen a claim for insurance has been made, and a legitimate question exists as to the propriety of denying coverage, the insurance company may file a declaratory judgment action before denying the claim. It is not necessary for the insurance company to wait for the insured to file a lawsuit against it.").

(b) The Stephensons and the Johnsons further argue that questions of fact remain as to whether GEICO received sufficient notice of the personal injury claims. We disagree.

"[A] notice provision expressly made a condition precedent to coverage is valid and must be complied with, absent a showing of justification."[28] An unjustified failure to give such notice ends the insurer's coverage obligations.[29] Although issues of justification and timely notice often raise factual questions, "the facts and circumstances of a particular case may render an insured's delay in giving notice of an occurrence to his insurer unjustified and unreasonable as a matter of law."[30]

GEICO's policy provided excess insurance coverage for damages "arising out of an *occurrence*, subject to the terms and conditions of [the] policy."[31] The policy, which required Barclay to maintain at least $100,000 in primary insurance coverage on the Kensington Drive property, generally covered damages exceeding the primary

---

[28] *Lankford v. State Farm Mut. Auto Ins. Co.*, 307 Ga. App. 12, 14 (703 Ga. App. 436) (2010).

[29] Id.

[30] *Plantation Pipe Line v. Stonewall Ins. Co.*, 335 Ga. App. 302, 306 (1) (780 SE2d 501) (2015).

[31] (Emphasis in original).

insurer's policy limits. It defined an "occurrence" as "an accident or event, including a continuous or repeated exposure to conditions which results in ***personal injury*** or ***property damage*** neither expected or intended by ***you***."[32] And it set forth several conditions, including:

> 1. **Duties after *Occurrence*, Claim or Suit**
> (a) If an ***occurrence*** is likely to involve us under this policy an ***insured*** shall promptly advise us of: (1) how, when and where the ***occurrence*** took place; and (2) names and addresses of the injured and all witnesses.
> (b) If information regarding a claim is received or if legal action is begun, an ***insured*** must immediately send ***us*** a copy of every: (1) notice; (2) demand; (3) report; (4) summons; or (5) other legal papers.
> . . .
> 4. **Suit Against *Us.*** No action shall be brought against ***us***:
> (a) unless an ***insured*** has complied with the policy provisions; and
> (b) until the obligations of an ***insured*** has been determined by trial and judgment or by agreement signed by ***us.***[33]

The policy terms, therefore, required the insured to "promptly" advise GEICO of an occurrence likely falling within the umbrella policy and to "immediately" send GEICO copies of legal papers regarding any claim or lawsuit. Coverage – as well as

---

[32] (Emphasis in original).

[33] (Emphasis in original).

the insured's ability to sue GEICO – depended on compliance with these and other policy conditions. Given these provisions, timely notice was an express precondition to coverage.[34]

Despite this precondition, notice was significantly delayed here. Stephenson fell on the Kensington Drive property on September 6, 2008, and he and his wife filed their personal injury action approximately two years later, on August 27, 2010. GEICO, however, was not notified of the incident until December 18, 2013, more than five years after Stephenson fell and three years after he and his wife brought suit.

The Stephensons and the Johnsons claim that the delay was justified because Barclay's husband died shortly after the Stephensons filed suit, Barclay was ill and grieving at the time, and she was not familiar with the family's business affairs. But they have pointed to no testimony from Barclay on the issue of notice. Barclay's son-in-law, who helped Barclay with her husband's estate, testified that he notified GEICO of the personal injury action when he became aware of the umbrella policy.

---

[34] See *Lankford*, supra at 13-14 (notice provision constituted a precondition to coverage where policy stated that insured could not bring action against insurer until all policy terms had been met); *Bituminous Cas. Corp. v. J. B. Forrest & Sons*, 132 Ga. App. 714, 717-718 (1) (209 SE2d 6) (1974) (same); Compare *Plantation Pipe Line*, supra at 312 (2) (notice not a precondition to coverage where policy included no statement requiring insured to comply with policy terms before maintaining an action against insurer).

He offered no explanation, however, as to why Barclay did not notify the insurer about the claims before December 18, 2013. And the record shows that on October 27, 2010, Barclay served a verified discovery response in the personal injury action through which she identified the GEICO policy as excess liability insurance coverage that "would be or may be used to satisfy or indemnify part or all of the judgment which may be entered in this case."

The terms of the GEICO policy required prompt notice of any occurrence likely to involve the policy and immediate notice of legal action. GEICO, however, was not informed of the claims or the lawsuit seeking over $1,000,000 in damages for over three years. Given this lengthy delay, Barclay's knowledge of the GEICO policy and its potential application, and the lack of evidence supporting justification, the trial court properly found that GEICO did not receive timely notice of the claims.[35] The

[35] See *Plantation Pipe Line*, supra at 307-308 (1) (b) (insured failed to comply with notice provision in umbrella insurance policy where it waited more than two years after realizing its liability exposure exceeded limits of primary insurance to notify excess carrier of occurrence); *Lankford*, supra at 15 ("[T]he failure to notify an insurer of an accident for almost two years amounts to an unreasonable delay as a matter of law.") (citations omitted); *Aegis Security Ins. Co. v. Hiers*, 211 Ga. App. 639, 640 (440 SE2d 71) (1994) (insurance company entitled to summary judgment where evidence showed that it did not learn about incident giving rise to claim until 22 months after incident occurred; notification delay unreasonable as a matter of law because policy required insured to give "notice of an insurable event as soon as practicable" and insured offered no justification for failing to provide timely notice).

18

insurer, therefore, was entitled to summary judgment in Case Nos. A16A0319 and A16A0320.[36]

*Judgments affirmed in Case Nos. A16A0319 and A16A0320. Judgments reversed in Case Nos. A16A0318 and A16A0321. Dillard and Peterson, JJ., concur.*

---

[36] See *Lankford*, supra; *Aegis Security Ins. Co.*, supra.