**THIRD DIVISION
DOYLE, P. J.,
MARKLE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 4, 2022**

# In the Court of Appeals of Georgia

A22A1147. HERNANDEZ v. GREAT AMERICAN ALLIANCE INSURANCE COMPANY.

A22A1211. STAR RESIDENTIAL, LLC et al. v. GREAT AMERICAN ALLIANCE INSURANCE COMPANY.

DOYLE, Presiding Judge.

In this declaratory judgment action, the appellants challenge the grant of summary judgment to Great American Alliance Insurance Company ("GAAIC"). In its ruling, the trial court determined that a GAAIC umbrella insurance policy did not cover an insurance claim made by Star Residential, LLC ("Star"), and Terraces at Brookhaven, LLC ("Terraces," collectively, the "Insureds"), based on a shooting injury suffered by Manuel Hernandez (collectively with the Insured, the "Claimants"). Hernandez appeals in Case No. A22A1147, and Star and Terraces appeal in Case No.

A22A1211, adopting Hernandez's arguments seeking insurance coverage.[1] The Claimants argue that the trial court erred by ruling that the umbrella policy did not cover the Insureds' claims because: (1) GAAIC's conduct waived its policy defenses, and (2) the GAAIC umbrella policy did not "follow form" to certain underlying insurance that excluded coverage. Because the trial court correctly interpreted and applied the insurance policies at issue, we affirm.

> Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review a trial court's summary judgment ruling de novo, construing the evidence and all reasonable inferences favorably to the nonmovant.[2]

The undisputed record shows that Star and Terraces own and/or operate an apartment complex where Hernandez lived. In May 2017, Hernandez was shot twice in the back by two assailants as he approached the door to his apartment one night.

---

[1] The appellants filed separate notices of appeal from the same order granting summary judgment.

[2] (Citations and punctuation omitted.) *Barclay v. Stephenson*, 337 Ga. App. 365 (787 SE2d 322) (2016).

Within days, Star generated an incident report, notified Terraces about the shooting, and notified its primary insurance carrier, Associated Industries Insurance Company, Inc. (a/k/a AmTrust North America, herein "AIIC"). Two weeks after that, counsel for Hernandez notified the Insureds that he represented Hernandez. At that time, the Insureds did not notify GAAIC about any potential claim.

In early December 2017, primary carrier AIIC received a formal demand letter from Hernandez seeking $1.5 million in compensation. The Insureds gave GAAIC notice of the claim on February 2, 2018. A few days later, GAAIC acknowledged the notice and stated that it had logged the matter as "incident only," and it did not expect to take any further action at this time, reminding the Insureds to report the claim to their primary insurance carrier if they had not already.

In March 2018, Hernandez sued the Insureds and served them in April 2018. In May 2018, AIIC sent the Insureds a letter denying coverage and declining to represent the Insureds in the litigation. In June 2018, GAAIC began paying for legal representation for the Insureds. Within a day of initiating representation, on June 20, 2018, GAAIC sent the first of three reservation of rights letters to the Insureds.

Among other things, GAAIC's June 2018 reservation of rights letter noted AIIC's denial of primary insurance coverage of bodily injury because: AAIC only covered injury due to "accident," as opposed to intentional conduct, and AAIC's primary policy also excluded coverage for bodily injury arising from the use of firearms. The GAAIC reservation of rights letter further noted that punitive damages were not covered by its umbrella policy, stating that the umbrella policy

> provides coverage, subject to all its terms and provisions, only for the portion of the damages above the . . . $1 million general liability primary policy limit identified in the Schedule of Underlying Insurance. As discussed above, the primary insurer [AIIC], which provided a $1 million general liability policy beneath [GAAIC's] Umbrella Policy, has denied coverage based on the Firearms Exclusion in the primary policy. If this coverage denial is correct, then you are responsible for the first $1 million to satisfy any judgment Mr. Hernandez may obtain. . . .

The letter also quoted the basic coverage language in the GAAIC umbrella policy stating that the coverage applied to "'bodily injury' . . . caused by an 'occurrence," and the letter stated that coverage would be subject to the "exclusions, terms, and conditions of this [umbrella] Policy." Although the letter did not quote the definition of "occurrence," the GAAIC policy defines it as an accident, as opposed to intentional conduct, similar to the AIIC policy. Further, the letter stated that

4

GAAIC "reserves the right to rely upon all the terms, provisions[,] and exclusions in its Umbrella Policy and in the underlying primary policy." One of those provisions not explicitly highlighted in the June 20 reservation of rights letter is a portion of the definition of "Insured" stating: "coverage applies only if the [underlying insurance] organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance *and then for no broader coverage than is provided under such 'underlying insurance*.'"[3]

Eleven months later, in May 2019, GAAIC sent the Insureds a supplemental reservation of rights letter after Hernandez added claims for nuisance and negligence per se. That letter noted that "[t]he same provisions of both [AIIC's] and [GAAIC's] policies discussed in the initial reservation of rights letter apply to Hernandez's additional claims. . . ." Further, the letter stated, "We next draw your attention to the definitions of 'bodily injury' . . . and 'occurrence' under [GAAIC's] policy," later noting that "'occurrence' . . . is defined as 'an accident.'"

A year later, in May 2020, GAAIC sent a second supplemental reservation of rights letter. In that letter, GAAIC explained that for the Insureds, "the [GAAIC] policy states that 'coverage applies only if the organization is included under

---

[3] (Emphasis supplied.)

coverage provided by the [underlying policies] . . . and then for no broader coverage than is provided under such 'underlying insurance.'" Therefore, the letter explained, the AIIC exclusions "apply equally to bar coverage in the [GAAIC] policy," including the firearms exclusion in the AIIC policy.[4]

In August 2020, GAAIC filed the present declaratory judgment action seeking resolution of the coverage issue with respect to GAAIC's policy. Over the ensuing months, GAAIC moved for summary judgment, Hernandez responded, and the Insureds filed a cross-motion for partial summary judgment. Following a hearing, the trial court granted GAAIC's motion for summary judgment and denied the Insured's cross-motion for summary judgment. The Claimants now appeal.

1. The Claimants first argue that GAAIC waived its policy defenses when it assumed their defense on June 19, 2018, without timely and specifically reserving its rights to assert its policy defenses. We disagree.

As a general rule,

---

[4] Later that same month, in a separate declaratory judgment action filed by AIIC, the trial court in that case granted AIIC's motion for judgment on the pleadings on the ground that AIIC's underlying insurance did not cover the Insureds' claims due to that policy's firearms exclusion.

risks not covered by the terms of an insurance policy, or risks excluded therefrom, while normally not subject to the doctrine of waiver and estoppel, may be subject to the doctrine when the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage. But the insurer can avoid estoppel by giving timely notice of its reservation of rights which fairly informs the insured of the insurer's position. To [be] . . . sufficient, the reservation of rights must, at a minimum, fairly inform the insured that, notwithstanding the insurer's defense of the action, it disclaims liability and does not waive the defenses available to it against the insured. Additionally, the reservation of rights should also inform the insured of the specific basis for the insurer's reservations about coverage. And importantly, to be effective, a reservation of rights must be unambiguous; if it is ambiguous, the purported reservation of rights must be construed strictly against the insurer and . . . in favor of the insured. Finally, the notice cannot be only a statement of future intent, and, once again, must be timely.[5]

In sum, "an insurer is not required to list each and every basis for contesting coverage in its initial reservation-of-rights letter in order to preserve its right to later assert a

---

[5] (Citations and punctuation omitted.) *Penn-America Ins. Co. v. Morgan Fleet Svcs.*, 356 Ga. App. 372, 376 (847 SE2d 378) (2020).

particular ground for noncoverage, [but] it must act reasonably promptly upon learning of a policy defense."[6]

Here, it is undisputed that within 24 hours of a discussion about assuming the Insured's defense, GAAIC sent the Insureds its first reservation of rights letter.[7] This letter was sufficiently prompt[8] and quoted the firearms exclusion in the underlying AIIC policy, as well as GAAIC's umbrella coverage provision triggered by an "occurrence," which is defined in GAAIC's policy as "an accident." Further, the letter explicitly stated:

> [GAAIC] reserves the right to rely upon all the terms, provisions and exclusions in its Umbrella Policy *and in the underlying primary policy*.

---

[6] (Citation omitted.) *Builders Ins. v. Tenenbaum*, 327 Ga. App. 204, 210 (1) (757 SE2d 669) (2014).

[7] When GAAIC was first notified of the potential claim in February 2018, it did not take any action to assume a defense or investigate the claim because it did not expect the umbrella insurance to be implicated. Instead, GAAIC referred the Insureds to the underlying coverage and notified them that it would not take further action at that time.

[8] A June 19, 2018 email in the record reflects "a virtual intro[duction]" between contacts for GAAIC and the Insureds, stating that a GAAIC representative "will be contacting you shortly about picking up the defense." The next day, GAAIC sent the June 20, 2018 reservation of rights letter. This belies the argument made by the Claimants that the initial reservation of rights "was not timely . . . [because GAAIC] assumed the . . . defense before it reserved its rights.

8

No present or subsequent action by GAAIC is to be construed as a waiver of any coverage issue or any rights available to you or GAAIC.[9]

This prompt reservation of rights letter was sufficient to notify the Insureds that even though GAAIC had initiated its coverage of a legal defense, it would still rely on the terms, definitions, and provisions of the umbrella policy; that the underlying insurance (quoted in the reservation of rights letter) likely did not cover injuries caused by firearms; and that GAAIC was not waiving its policy defenses implicated by the terms of the GAAIC policy *or the underlying AIIC policy*, which policy GAAIC quoted in the reservation of rights letter.

Although the language in the third reservation of rights letter sent in May 2020 more clearly spelled out the fact that the GAAIC policy "followed form" to the firearms exclusion in the underlying insurance, GAAIC's first reservation of rights letter quoted the firearms exclusion and reserved its right to rely on provisions in the underlying policy. Thus, this was more than a mere boilerplate recitation that GAAIC reserved the right to rely on some unidentified defense in the future.[10] Further, the

---

[9] (Emphasis supplied.)

[10] Compare *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 406 (2) (730 SE2d 413) (2012) (holding that "[t]he boilerplate language in the denial letter purporting to reserve the right to assert a myriad of other defenses at a later date did not clearly

9

provisions for which the Claimants seek waiver are not non-essential penalties in the insurance contract;[11] rather, they are the basic terms and definitions that establish the coverage purchased by the Insured. A reservation of rights should operate to inform the insured, not create a trap for the insurer by reforming the insurance contract to provide coverage never bargained for by the parties.[12] In sum, the record shows that GAAIC was acting in good faith to provide a defense under a reservation of rights, and in light of the specific language in the initial reservation of rights letter, we decline to penalize GAAIC for further clarifying those positions in supplemental reservations of rights. Accordingly, we discern no error in the trial court's determination that GAAIC's conduct did not waive its basic coverage defenses.

2. The Claimants next contend that the trial court erred by ruling that AIIC's policy was "underlying insurance" for purposes of GAAIC's umbrella policy, and

---

put EWES on notice of Maxum's position.").

[11] Compare id. at 407 (3) ("Georgia courts do not favor forfeitures in construing insurance contracts. Rather, courts infer waiver of non-essential parts of an insurance contract that are penal in nature.") (citation omitted).

[12] See generally *American Safety Indem. Co. v. Sto Corp.*, 342 Ga. App. 263, 268 (2) (802 SE2d 448) (2017) ("The purpose of a reservation of rights is to protect both the insurer and the insured by allowing an insurer who is uncertain of its obligations under the policy to undertake a defense while reserving its rights to ultimately deny coverage following its investigation.") (punctuation omitted).

therefore, the GAAIC policy cannot "follow form" to the exclusions in the underlying insurance. We disagree.

As noted by the trial court, the GAAIC policy is, by its terms, an umbrella policy, and the policy requires the Insureds to purchase underlying insurance. Consistent with this, the GAAIC policy defines "underlying insurance" as "the insurance coverage provided under policies shown in the 'Schedule of Underlying Insurance,' or any additional policies agreed to by us in writing." The Schedule of Underlying Insurance, in turn, lists basic policy limits for general liability insurance, and the Certificate Holder Notice notes that the Insureds warrant that they have purchased underlying insurance in compliance with the Schedule, as the Insureds did in this case by purchasing the AIIC policy.[13] Further, the umbrella policy identifies the named insured as "All members of the Distinguished Properties Umbrella Managers, Inc[.] Purchasing Group," and the certificate of coverage incorporated into the umbrella policy identifies Star and Terraces as members of the Distinguished Properties Umbrella Managers, Inc. ("DPUM"). Last, the umbrella policy defines "Insured" as the members of the DPUM risk purchasing group, and provides that

---

[13] The Insureds do not contend that there is other underlying insurance applicable to the GAAIC policy.

11

"coverage applies *only if the organization is included under the coverage provided by the policies* listed in the Schedule of Underlying Insurance *and then for no broader coverage than is provided under such 'underlying insurance*.'"[14]

Based on this structure, which must be viewed as a whole,[15] the trial court correctly concluded that: (1) the Insureds are properly identified as members of the DPUM risk purchasing group covered by the umbrella policy, (2) the Insureds purchased AIIC as underlying insurance for purposes of the umbrella policy, and (3) the umbrella policy coverage is no broader than the underlying AIIC insurance purchased. Otherwise, according to the GAAIC's definition of "Insured," if the AIIC policy is not included as underlying insurance, then the umbrella policy does not apply.

Accordingly, in light of the controlling language and structure of the GAAIC insurance contract, the trial court did not err by holding that GAAIC's umbrella coverage could not be expanded beyond the underlying coverage, and the trial court

---

[14] (Emphasis supplied.)

[15] See *Hagan v. Hagan*, 356 Ga. App. 756, 761 (2) (848 SE2d 914) (2020) ("When construing an insurance contract, we must view the policy as a whole and read the policy as a layman would read it.") (punctuation omitted).

correctly granted summary judgment to GAAIC and denied the Insureds' motion for partial summary judgment.

*Judgments affirmed. Markle, J., and Senior Appellate Judge Herbert E. Phipps concur.*